**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

LOUIS V. GABALDONI, M.D.,
            *Plaintiff-Appellant,*

v.

WASHINGTON COUNTY HOSPITAL
ASSOCIATION; ANTIETAM HEALTH
SERVICES, INCORPORATED,
            *Defendants-Appellees.*

No. 00-2203

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Benson E. Legg, District Judge.
(CA-98-1094-L)

Argued: April 5, 2001

Decided: May 17, 2001

Before WIDENER and LUTTIG, Circuit Judges, and
Rebecca Beach SMITH, United States District Judge for the
Eastern District of Virginia, sitting by designation.

_____

Affirmed by published opinion. Judge Luttig wrote the opinion, in
which Judge Widener and Judge Smith joined.

_____

## COUNSEL

**ARGUED:** Kevin Anthony Dunne, OBER, KALER, GRIMES &
SHRIVER, P.C., Baltimore, Maryland, for Appellant. Kathleen A.
Ellis, PIPER, MARBURY, RUDNICK & WOLFE, L.L.P., Baltimore,

Maryland, for Appellees. **ON BRIEF:** John W. Sippel, Jr., OBER, KALER, GRIMES & SHRIVER, P.C., Baltimore, Maryland, for Appellant. Natalie F. Zaidman, PIPER, MARBURY, RUDNICK & WOLFE, L.L.P., Baltimore, Maryland, for Appellees.

---

**OPINION**

LUTTIG, Circuit Judge:

Washington County Hospital Association ("WCHA") terminated Louis Gabaldoni's clinical privileges and denied his application for reappointment to the medical staff. Gabaldoni filed a lawsuit alleging various contract and tort claims against WCHA and Antietam, WCHA's sister company. The district court granted summary judgment to WCHA and Antietam on all of Gabaldoni's claims. For the reasons that follow, we affirm.

I.

Dr. Louis V. Gabaldoni is an obstetrician/gynecologist who first became a member of the medical staff of WCHA — a private non-profit hospital located in Hagerstown, Maryland — in 1984. J.A. 299. Like any other member of the medical staff, Gabaldoni was required to apply for reappointment to the medical staff every two years. J.A. 88, 300.

In July 1995, Gabaldoni submitted his biannual application for reappointment to WCHA. J.A. 305-06. After various committees reviewed Gabaldoni's application, the WCHA Board of Trustees ("Board") elected both to terminate his clinical privileges and to deny his application for reappointment to the medical staff. The Board notified Gabaldoni about its decision by letter, in which the Board explained its reasoning as follows:

> The findings and conclusions of the Grievance Committee clearly indicate a serious transgression on your part with respect to [a] patient's medical chart. Furthermore, your record indicates there have been two other grievances within

the last two years and a total of four grievances within the last ten years, in addition to this most recent grievance. . . . Some of the more significant aspects reviewed by the Board and which influenced their decision are your record of multiple grievances, reviews of your clinical judgment and performance in several cases, your behavior indicating a lack of regard for rules and regulations, e.g., multiple suspensions for failure to complete medical charts, and your record of suits and complaints alleging professional negligence.

J.A. 212-13.[1] In the same letter, the Board also notified Gabaldoni of his right to a hearing regarding the Board's decision to deny his reappointment. J.A. 213.

Gabaldoni elected to request such a hearing, and a Hearing Committee comprising an ad hoc group of doctors was convened to hear the evidence, render findings of fact, and recommend to the Board whether Gabaldoni should be reappointed. J.A. 221, 353-57. Gabaldoni's attorney called witnesses and presented numerous supportive affidavits from patients and physicians at the hearing. J.A. 356-57. Thereafter, the Hearing Committee recommended to the Board that Gabaldoni be conditionally reappointed and that a letter of censure be placed in his file. J.A. 271.

After reviewing the record, the Board again elected to terminate Gabaldoni's clinical privileges and deny his reappointment, contrary to the recommendation of the Hearing Committee. J.A. 295. In a letter

---

[1]The "recent grievance" to which the Board referred in its letter arose out of Gabaldoni's care of Karen Moats, a patient who had died a few days after giving birth. J.A. 379. WCHA's Grievance Committee found that Gabaldoni had improperly added entries to Moats' medical records. Thus, the Committee recommended that a letter of censure be placed in Gabaldoni's personnel file and that he be required to attend a course in the proper maintenance of medical records. J.A. 170-70A. In addition, the Board placed a letter of censure in Gabaldoni's file arising out of his failure to respond appropriately to repeated requests from nurses to evaluate Moats. J.A. 338-39. Indeed, an outside physician determined that Gabaldoni had deviated from the applicable standard of care in treating Moats. J.A. 154.

to Gabaldoni, the Board explained the basis for its decision as follows:

> The Board's decision was to terminate your medical staff membership and clinical privileges on the basis of the most recent grievance and your record of prior grievances. The Hearing Committee found as a fact that you inappropriately altered a patient's original chart and failed to document an important aspect pertinent to the patient's care. The Board was aware of an inordinate number of previous grievances against you as well as their frequency and nature, especially the fact that one of the previous grievances established that you altered a medical record. The Board feels your record indicates a pattern of failure to adhere to established and basic tenets of ethical and professional behavior.
>
> The Board also decided to deny your application for reappointment and renewal of your clinical privileges. In reaching the decision the Board considered not only the most recent grievance but your entire record of performance and behavior at the hospital e.g. five grievances, multiple suspensions from the medical staff for failure to complete medical charts in timely fashion, four malpractice suits of which one is pending and three have been settled by substantial payments by you or your insurance company (75,000, 150,000 and approximately 1,000,000), professional opinions indicating multiple breaches in standards of care and deficiencies in your clinical judgment.

J.A. 296.

Gabaldoni subsequently filed this lawsuit against WCHA and Antietam, a for-profit medical service organization that is wholly owned by Washington County Health Systems, WCHA's parent company. He alleged that WCHA breached its bylaws by denying his reappointment and terminating his clinical privileges and by disseminating information to hospital personnel and third parties regarding the same. He also alleged that WCHA and Antietam tortiously interfered with his contractual and business relations. J.A. 18-25. The

district court granted summary judgment to WCHA and Antietam on all counts of the complaint, J.A. 564, and this appeal followed.

## II.

The district court granted summary judgment to WCHA on Gabaldoni's breach of contract claims (which were based upon WCHA's alleged breach of the bylaws) on the ground that WCHA was entitled to immunity from damages under the Health Care Quality Improvement Act ("HCQIA"). *See* 42 U.S.C. § 11111(a). The HCQIA provides a "professional review body"[2] with immunity from damages whenever a "professional review action"[3] is taken:

> (1) in the reasonable belief that the action was in the furtherance of quality health care,
>
> (2) after a reasonable effort to obtain the facts of the matter,
>
> (3) after adequate notice and hearing procedures are afforded to the physician involved or after such other proce-

---

[2]"The term 'professional review body' means a health care entity and the governing body or any committee of a health care entity which conducts professional review activity, and includes any committee of the medical staff of such an entity when assisting the governing body in a professional review activity." 42 U.S.C. § 11151(11).

[3]The HCQIA provides that:

> The term "professional review action" means an action or recommendation of a professional review body which is taken or made in the conduct of professional review activity, which is based on the competence or professional conduct of an individual physician (which conduct affects or could affect adversely the health or welfare of a patient or patients), and which affects (or may affect) adversely the clinical privileges, or membership in a professional society, of the physician. Such term includes a formal decision of a professional review body not to take an action or make a recommendation described in the previous sentence and also includes professional review activities relating to a professional review action.

42 U.S.C. § 11151(9).

dures as are fair to the physician under the circumstances, and

(4) in the reasonable belief that the action was warranted by the facts known after such reasonable effort to obtain facts and after meeting the requirement of paragraph (3).

A professional review action shall be presumed to have met the preceding standards necessary for the protection set out in section 11111(a) of this title unless the presumption is rebutted by a preponderance of the evidence.

42 U.S.C. § 11112(a). Due to the presumption of immunity contained in section 11112(a), we must apply an unconventional standard in determining whether WCHA was entitled to summary judgment — whether a reasonable jury, viewing all facts in a light most favorable to Gabaldoni, could conclude that he had shown, by a preponderance of the evidence, that WCHA's actions fell outside the scope of section 11112(a). *See*, *e.g.*, *Sugarbaker* v. *SSM Health Care*, 190 F.3d 905, 912 (8th Cir. 1999); *Brader* v. *Allegheny General Hospital*, 167 F.3d 832, 839 (3d Cir. 1999).

On appeal, Gabaldoni challenges the district court's grant of summary judgment on the ground that he presented sufficient evidence to create a jury issue with regard to every element in section 11112(a). Like the district court, we reject Gabaldoni's arguments and hold that there was insufficient evidence from which a jury could conclude that the Board's actions fell outside the scope of section 11112(a).[4]

---

[4]Gabaldoni does not dispute that counts I and III of his complaint, which relate to WCHA's failure to evaluate him in accordance with "standard medical criteria" and its failure to provide him with proper process, fall under the umbrella of HCQIA immunity if the elements in section 11112(a) are satisfied. *See*, *e.g.*, *Imperial* v. *Suburban Hosp. Assoc.*, 37 F.3d 1026, 1027, 1030 (4th Cir. 1994) (holding that a hospital was entitled to immunity under the HCQIA with regard to a claim that the hospital failed to follow its own bylaws in denying reappointment). We likewise hold that count II of Gabaldoni's complaint, which alleges that WCHA disseminated information about his termination in breach of its bylaws, is also covered by the broad grant of immunity contained in sec-

### A.

First, to receive HCQIA immunity, the "professional review action" must be taken "in the reasonable belief that the action was in furtherance of quality health care." Gabaldoni argues that because several committees without final decisionmaking authority recommended reappointment,[5] there is a genuine issue of material fact about whether the action taken by the Board in denying reappointment and terminating Gabaldoni's privileges was in furtherance of quality health care. We disagree.

We apply an objective test "which looks to the totality of the circumstances" in determining whether a professional review action was "undertaken in the *reasonable belief* that quality health care was being furthered." *Imperial*, 37 F.3d at 1030 (emphasis in original). As the Board explained in its letters to Gabaldoni, he had been the subject of multiple malpractice lawsuits, suspensions, and grievances. Moreover, two of those grievances were related to the tragic death of his patient. Thus, the record is replete with objective evidence of Gabaldoni's deviations from hospital policy and the applicable standard of care; the Board reasonably relied on, and even cited, such evidence in support of its decision to deny reappointment and terminate his privileges. Furthermore, even the committee reports relied upon by Gabaldoni acknowledged that there were problems with his performance and thus proposed that conditions be placed on his reappointment. J.A. 174-77, 267-271.

Accordingly, we agree with the district court that "[l]ooking objectively at the totality of the circumstances . . . there was clearly enough evidence against Dr. Gabaldoni for the Board to believe that it was

---

tion 11112(a) (assuming the four elements have been met) because *announcement* of a change in a physician's status is inherently part of the "professional review action" protected by the HCQIA. J.A. 375 (Gabaldoni testimony that it is important for hospital staff to be informed of any status changes regarding a physician).

[5]The Credentials Committee, the Medical Executive Committee, and the Hearing Committee all recommended that Gabaldoni be reappointed. J.A. 174, 271.

furthering the quality of health care in terminating his privileges." J.A. 552-53; *see also* J.A. 294 (Board minutes from the discussion about Gabaldoni's reappointment application stating that "[m]embers expressed their concern for providing the highest quality of patient care possible for our community").

### B.

Second, section 11112(a)(2) requires that the "professional review action" be taken "after a reasonable effort to obtain the facts of the matter." Gabaldoni essentially argues that because the Board did not undertake an independent investigation of its own, its decision could not have been based upon a reasonable effort to obtain the facts. Gabaldoni's argument is without merit.

The HCQIA does not require the ultimate decisionmaker to investigate a matter independently, but requires only a "reasonable effort to obtain" the facts. Thus, it was permissible for the Board to rely on the reports and investigations of the various committees (including the Hearing Committee which was expressly formed for this purpose) in rendering its decision, so long as "the totality of the process leading up to the Board's 'professional review action' . . . evidenced a reasonable effort to obtain the facts of the matter." *Matthews* v. *Lancaster General Hosp.*, 87 F.3d 624, 637 (3d Cir. 1996); *see also Bryan* v. *James E. Holmes Regional Med. Ctr.*, 33 F.3d 1318, 1335 (11th Cir. 1994) (holding that a board's reliance on the reports of various committees was sufficient to satisfy section 11112(a)(2)).

In this case, the Board's corporate counsel, Mr. Schaefer, provided summaries of the evidence collected by the various committees to each Board member. Although the summaries did not — and indeed could not — include every single fact and finding from every committee report, there is no evidence to suggest that the summaries provided to the Board were materially insufficient or misleading.[6] And,

---

[6]Gabaldoni also challenges the district court's discovery ruling that WCHA was required to produce only redacted versions of the Board minutes because they contained privileged attorney-client communications. However, the district court reviewed the minutes *in camera* and

as the district court noted in ruling on WCHA's summary judgment motion, the investigations by the various committees upon which the Board relied "were, by all accounts, thorough." J.A. 554.

Indeed, as the minutes from the meeting disclose, the decision to terminate Gabaldoni's clinical privileges and deny his application for reappointment was reached by the Board only "after complete review of the record." J.A. 294. Accordingly, we hold that no reasonable jury could find that the Board took action without a "reasonable effort to obtain the facts of the matter."

C.

Third, the "professional review action" must be taken "after adequate notice and hearing procedures are afforded to the physician *or* after such other procedures as are fair to the physician under the circumstances." 42 U.S.C. § 11112(a)(3) (emphasis added). A "professional review action" does not occur under the HCQIA until "an action or recommendation of a professional review body [ ] is taken or made in the context of a professional review activity . . . which affects (or may affect) adversely the clinical privileges, or membership in a professional society, of the physician." 42 U.S.C. § 11151(9). Here, the "professional review action" occurred when the Board took the action — that is, when the Board voted — to terminate Gabaldoni's clinical privileges and deny his application for reappointment, which indisputably occurred after the requisite notice and hear-

---

was "satisfied that the redacted sections of the minutes [we]re related to Mr. Schaefer's provision of legal assistance to the WCHA and [we]re therefore protected by attorney-client privilege." A8-A9. Gabaldoni did not attempt to have the unredacted versions of the minutes added to the record on appeal nor did he request that they be placed in the district court record under seal. Because we do not have any means to examine the portions of the minutes deemed privileged by the district court, we are unable to review its ruling. *See Stearns* v. *Genrad, Inc.*, 752 F.2d 942, 945 (4th Cir. 1984). In addition, the district court did not abuse its discretion in finding that Schaefer's deposition *following the close of discovery* was unnecessary. *See*, *e.g.*, *LeBlanc* v. *Cahill*, 153 F.3d 134, 154 n.9 (4th Cir. 1998).

ing procedures were followed. Hence, since Gabaldoni has failed to present any evidence that the Board took any "action" or made any "recommendation" prior to the vote, Gabaldoni has failed to create a jury issue with regard to section 11112(a)(3).

Nor does Gabaldoni's reliance on Brooks' testimony at the hearing compel a contrary result. Brooks, a non-Board member, made the following statement before the Hearing Committee:

> Most recently, the Board and Mr. Murphy tell me that they will thoughtfully review the findings of this Committee. They — they have, in many verbal communications since they announced their decision, indicated that their mind and their resolve was firm to go ahead with his termination. I think that would be a fair thing to say.

J.A. 246-47. Brooks' statement suggests, at most, that the Board had a firm resolve to go ahead with the termination. It does not imply that the Board took any "action" or made any "recommendation[s]" prior to the actual vote. Indeed, Brooks' statement that the Board intended to "thoughtfully review the findings of the Hearing Committee" strongly confirms that the "professional review action" did not occur prior to the hearing since the Board planned to take additional steps prior to making a decision.

In sum, therefore, we affirm the district court's grant of summary judgment to WCHA on Gabaldoni's breach of contract claims because no reasonable jury could have found that the Board's actions fell outside the scope of section 11112(a).[7] *See Bryan*, 33 F.3d at 1332 (stating that HCQIA immunity is a question of law for the court to decide when the record becomes sufficiently developed).

---

[7]Gabaldoni does not raise any specific objections to the district court's conclusions regarding section 11112(a)(4). Accordingly, for the same reasons set forth above, we agree with the district court that there is no jury issue with regard to section 11112(a)(4). *See Sugarbaker*, 190 F.3d at 916 ("Our analysis under § 11112(a)(4) closely tracks our analysis under § 11112(a)(1).") (quoting *Brader*, 167 F.3d at 843); *see also* Appellants Reply Br., at 5 n.5 ("Dr. Gabaldoni has not conceded [the fourth prong of HCQIA immunity], as it simply encompasses the other standards of the HCQIA.").

## III.

In counts IV and V of the complaint, Gabaldoni alleges that WCHA and Antietam tortiously interfered with his business relations with his patients and that Antietam tortiously induced WCHA to breach its contract with Gabaldoni so that Antietam could acquire his patients. Under Maryland law, both of these torts require that a plaintiff prove wrongful or improper conduct by the tortfeasor. *See Travelers Indem. Co.* v. *Merling*, 605 A.2d 83, 90 (Md. 1992). Such wrongful conduct includes "violence or intimidation, defamation, injurious falsehood or other fraud, violation of the criminal law, and the institution or threat of groundless civil suits or criminal prosecutions in bad faith[.]" *K&K Mgmt., Inc.* v. *Lee*, 557 A.2d 965, 979 (Md. 1989) (quoting W. Prosser, Handbook of the Law of Torts § 130, at 952-53 (4th ed. 1971)); *Volcjak* v. *Washington County Hosp. Assoc.*, 723 A.2d 463, 479 (Md. Ct. Spec. App. 1999).

Gabaldoni has failed to adduce any evidence of wrongful conduct by Antietam. At most, Antietam pursued its own business interests in negotiating for Gabaldoni's practice and there is no evidence that such negotiations were connected in any way to Gabaldoni's termination. *See*, *e.g.*, *Alexander & Alexander Inc.* v. *B. Dixon Evander & Assocs., Inc.*, 650 A.2d 260, 269 (Md. 1994) ("[W]e have made clear in our cases that acting to pursue one's own business interests at the expense of others is not, in itself, tortious.").

With regard to WCHA, Gabaldoni has presented evidence only that WCHA may have breached its contract with him. Breach of contract, however, is insufficient to support a tortious interference claim unless "the defendant committed such breach so that *the defendant* could obtain the benefit of the relationship with the plaintiff's customers." *Volcjak*, 723 A.2d at 480 (emphasis added). Here, Gabaldoni has not presented any evidence that *WCHA* breached a contract in order to obtain the benefit of a relationship with his patients.

Accordingly, we affirm the district court's grant of summary judgment to WCHA and Antietam on Gabaldoni's tortious interference claims.

*CONCLUSION*

For the reasons stated herein, we affirm the judgment of the district court.

*AFFIRMED*