**Rakesh WAHI, M.D., Plaintiff,**

v.

**CHARLESTON AREA MEDICAL CENTER, et al., Defendants.**

**Civil Action No. 2:04–cv–00019.**

United States District Court,
S.D. West Virginia,
Charleston Division.

Sept. 29, 2006.

John C. Yoder, Yoder Law Offices, Harpers Ferry, WV, for Plaintiff.

David S. Givens, Erica M. Baumgras, Nathaniel K. Tawney, Richard D. Jones, Tricia R. Herzfeld, Flaherty Sensabaugh & Bonasso, Charleston, WV, for Defendants.

## ORDER

GOODWIN, District Judge.

Pending before the court are the defendants' Motions for Summary Judgment [Docket 75, Docket 79, and Docket 81]. After a thorough review of the pending motions and responses, the court **FINDS** for the defendants and **GRANTS** their summary judgment motions on all counts.

## I. BACKGROUND

### A. Factual Summary

The plaintiff, Rakesh Wahi, M.D. (Dr. Wahi), has been licensed to practice medicine in West Virginia since 1993. He specializes in cardiovascular, thoracic and general surgical procedures. In January of 1993, Dr. Wahi joined the staff of the defendant Charleston Area Medical Center (CAMC), and in July of 1993 he was promoted from the defendant's probationary staff to provisional staff. CAMC is a private entity incorporated in West Virginia.

In June of 1994, Dr. Wahi started his own practice at CAMC, and also began exploring the possibility of associating himself with a separate medical group in Beckley, WV, called the "Medsurg Group." According to Dr. Wahi, CAMC then began taking various steps to restrict the plaintiff's ability to practice medicine and to prevent the plaintiff from competing with CAMC. Between 1995 and 1999 Dr. Wahi was the subject of several peer review investigations concerning his performance as a physician. The investigations were mainly conducted internally, but at least one review was conducted by an external committee. Although the reasoning behind and validity of the investigations, as well as, the outcomes remain a point of contention and disagreement between the parties, the reviews did result in various restrictions and suspensions being placed on Dr. Wahi's privileges prior to 1999. As a result of these investigations, negative reports were sent to the National Practitioner's Data Bank (Data Bank).

The Data Bank is a national clearinghouse established pursuant to the Health Care Quality Improvement Act of 1986 (HCQIA). *See* 42 U.S.C. §§ 11133–11134 (2004). Under the HCQIA, health care entities may qualify for immunity from civil liability for certain actions if they report information to the Data Bank following "a professional review action that adversely affects the clinical privileges of a physician for a period longer than 30 days." *Id.* § 11133(1)(A). According to Congress, the purpose of the Data Bank and reporting incentives is "to restrict the ability of incompetent physicians to move from State to State without disclosure or discovery of the physician's previous damaging or incompetent performance." *Id.* § 11101(2). Reported information must

include the physician's name and a description of the reasons for the adverse action. *Id.* § 11133(3)(A) and (B).

According to Dr. Wahi, negative reports were made about him to the Data Bank by CAMC on November 25, 1996; December 6, 1996; December 24, 1997; March 22, 1999; and September 13, 1999. Based on CAMC's reports to the Data Bank, the West Virginia Board of Medicine (Board of Medicine) investigated Dr. Wahi and brought charges against him on three separate occasions. The plaintiff alleges that the defendant CAMC worked closely with the Board of Medicine to bring these charges and attempted to deprive him of his license to practice medicine in West Virginia. The Board of Medicine dismissed the last charges against Dr. Wahi on November 10, 2003.

The situation between CAMC and Dr. Wahi culminated in July 1999, when the credentials committee withdrew its recommendation that Dr. Wahi's medical staff privileges at CAMC be renewed. The committee's decision was followed by an investigation which resulted in the summary suspension of Dr. Wahi's medical staff privileges at CAMC. However, during the month of July 1999, there were numerous communications between CAMC and Dr. Wahi, in which CAMC notified Dr. Wahi of the allegations, the general nature of evidence, the possible adverse recommendations that the committee was considering, in addition to Dr. Wahi's rights under CAMC medical staff bylaws. In fact, the letters sent from CAMC to Dr. Wahi often included attachments of the relevant portions of the bylaws.

At some point during the process, either before or after the suspension of his medical privileges at CAMC Dr. Wahi obtained counsel. Following his suspension, Dr. Wahi, via counsel, requested a hearing pursuant to the hospital's bylaws. However, a hearing has never been held. Dr. Wahi alleges that a hearing was never set because CAMC failed to meet its burden of setting a hearing date. CAMC, on the other hand, alleges that a hearing was never scheduled because Dr. Wahi refused to agree to the parameters of any proposed hearing. Ultimately, Dr. Wahi alleges that he has been denied a fair hearing and that the adverse professional review actions were taken pursuant to a conspiracy by the defendants to monopolize thoracic and cardiovascular medicine and surgery in the Charleston, Beckley, Bluefield, and Parkersburg area of West Virginia.

## B. Procedural History

Dr. Wahi filed an eleven-count Amended Complaint against CAMC and several other defendants, both named and unnamed. Dr. Wahi claimed that the defendants: 1) engaged in an antitrust conspiracy under the Sherman Act (15 U.S.C. § 1); 2) engaged in antitrust monopolization under the Sherman Act (15 U.S.C. § 2); 3) violated his Fifth and Fourteenth Amendment Due Process rights; 4) retaliated against him in violation of his First Amendment rights; 5) breached the contract between CAMC and Dr. Wahi; 6) conspired to deny him Due Process in violation of his rights under the Fifth and Fourteenth Amendments; 7) defamed him by reporting him to the Data Bank; 8) invaded his privacy and disclosed confidential information; 9) violated his civil rights under 42 U.S.C. § 1981; 10) conspired to obstruct justice and deny equal protection in violation of 42 U.S.C. § 1985; and 11) neglected to prevent the conspiracy alleged in Count 10 in violation of 42 U.S.C. § 1986. Based on these claims, Dr. Wahi requests injunctive relief, actual damages, and punitive damages.

In response to Dr. Wahi's claims, the defendants moved to dismiss the Complaint for failure to state a claim upon which relief can be granted. In an opinion issued October 27, 2004, this court dismissed counts one and two without prejudice and granted plaintiff leave to amend the complaint to allege an impact on interstate commerce; and this court also dismissed counts three, four, and eight for failure to state a claim upon which relief can be granted. The court then ordered the parties to engage in limited discovery and brief the court on whether defendants are entitled to immunity from civil liability under the HCQIA for all claims except civil rights claims; and whether any issues of material fact exists regarding claims alleged in Counts Five, Six, Nine, Ten and Eleven.

An amended complaint was filed and the counts were renumbered as follows: 1) antitrust conspiracy under the Sherman Act (15 U.S.C. § 1); 2) antitrust monopolization under the Sherman Act (15 U.S.C. § 2); 3) breach of contract between CAMC and Dr. Wahi; 4) conspiracy to deny Due Process in violation of the Fifth and Fourteenth Amendments (42 U.S.C. § 1983); 5) defamation; 6) violation of civil rights under 42 U.S.C. § 1981; 7) conspiracy to obstruct justice and deny equal protection in violation of 42 U.S.C. § 1985; and 8) neglect to prevent the conspiracy alleged in Count 7 in violation of 42 U.S.C. § 1986.

Thereafter, Dr. Wahi voluntarily dismissed all defendants except CAMC, Dr. Crotty, and Dr. Chapman. Finally, Dr. Wahi also voluntarily dismissed Counts Seven and Eight. This now leaves the Court to address the following issues: a) whether CAMC is entitled to immunity under HCQIA from civil liability for all counts except the civil rights claims; and b) whether any genuine issue of material fact remains for Counts Three, Four, and Six.

## II. THE HEALTH CARE QUALITY IMPROVEMENT ACT (HCQIA)

■ The HCQIA was enacted in 1986 to improve the quality of medical care by restricting the ability of physicians who have been found to be incompetent from repeating this malpractice by moving from state to state without discovery of such finding. *Imperial v. Suburban Hospital Ass'n, Inc.*, 37 F.3d 1026, 1028 (4th Cir. 1994) (citing 42 U.S.C. § 11101). The HCQIA establishes a national reporting system to follow bad doctors from place to place, and provides immunity from damages for persons participating in professional review activities. *Imperial*, 37 F.3d at 1028.

To assure that hospitals and doctors cooperate with the system and engage in meaningful professional review, Congress found it necessary to provide qualified immunity from damages actions for hospitals, doctors, and others who participate in the professional review process. *Id.* (citing 42 U.S.C. § 11101). "Thus, 42 U.S.C. § 11101 provides that persons participating in professional review activities that meet the standards outlined in 42 U.S.C. § 11112, 'shall not be liable in damages under any law of the United States or any State' with respect to the person's participation in such activities." *Imperial*, 37 F.3d at 1028. The conditions set forth granting such immunity are set forth in § 11112(a) and are discussed below.

### A. Qualifications for HCQIA Immunity

■ The HCQIA provides immunity from damages for those who participate in professional peer review. For HCQIA immunity to attach, however, the peer review action must comport with due process.

*Freilich v. Upper Chesapeake Health, Inc.,* 313 F.3d 205, 211 (4th Cir.2002). To determine whether an action comports with due process, the HCQIA adopts a four pronged test. Specifically, the peer review action must be taken (1) in the reasonable belief that the action was in furtherance of quality health care; (2) after a reasonable effort to obtain the facts of the matter; (3) after adequate notice and hearing procedures are afforded to the physician involved or after such other procedures as are fair to the physician under the circumstances; and (4) in the reasonable belief that the action was warranted by the facts known after such reasonable effort to obtain facts. 42 U.S.C. § 11112(a)(1)-(4). The standard laid out by the test is one of objective reasonableness, looking at the totality of the circumstances. *Freilich,* 313 F.3d at 212 (quoting *Imperial v. Suburban Hospital Assoc.,* 37 F.3d 1026, 1030 (4th Cir.1994)).

█ In meeting this test, § 11112(a) of the HCQIA provides a presumption in favor of the health care entity. It is presumed that a health care entity has met the necessary standards and is entitled to immunity unless the presumption is rebutted by a preponderance of the evidence. § 11112(a). In order for an entity to continue to qualify for immunity, § 11133 requires that the outcomes of professional review actions be reported to state boards of medical examiners. There is no immunity from claims alleging a civil rights violation or claims for declaratory or injunctive relief. *Imperial,* 37 F.3d at 1030 (citing 42 U.S.C. § 11112).

### B. Determination of Whether This is a Peer Review Action

█ Dr. Wahi argues that the underlying suit does not arise as the result of a professional peer review action. Under the HCQIA only actions that meet the definition of professional review are eligible for immunity. *Gordon v. Lewistown Hospital,* 423 F.3d 184, 201 (3d Cir.2005). Therefore, this court will first address whether the action qualifies as a peer review action before applying the four § 11112(a) factors to determine immunity.

The HCQIA defines professional review action as:

[A]n action or recommendation of a professional review body which is taken or made in the conduct of professional review activity, which is based on the competence or professional conduct of an individual physician (which conduct affects or could affect adversely the health or welfare of a patient or patients), and which affects (or may affect) adversely the clinical privileges, or membership in a professional society, of the physician.

§ 11151(9). Professional review activity "means an activity of a health care entity with respect to an individual physician-(A) to determine whether the physician may have clinical privileges with respect to, or membership in, the entity, (B) to determine the scope or conditions of such privileges or membership, or (C) to change or modify such privileges or membership." § 11151(10).

█ In the present action, it is clear that the suit arises as a result of the recommendations and activities of a health care entity in regard to the competence and professional conduct of Dr. Wahi, and whether he will continue to have privileges at CAMC. The decisions of CAMC have, in fact, adversely affected Dr. Wahi's privileges. Furthermore, the statute does not require that the activities or actions be properly conducted or conducted in a specific manner in order to be deemed a professional review action. Thus, regardless of whether this court determines CAMC's activities to be proper, the underlying action is subject to the requirements

of the HCQIA. Having determined that the current action is a suit arising as the result of a peer review activity, the court will now determine whether the actions of CAMC are entitled to immunity under the HCQIA.

### C. Summary Judgment and the HCQIA

■ As stated above, § 11112(a) provides a presumption that a health care entity has met the necessary standards laid out by the statute, and thus is entitled to immunity unless this presumption is rebutted by a preponderance of the evidence. This presumption of immunity established by the HCQIA creates a unique summary judgment standard. *See Gabaldoni v. Washington County Hospital,* 250 F.3d 255, 260 (4th Cir.2001) (finding that due to the presumption of immunity contained in § 1 1112(a), an unconventional standard must be applied in determining whether the hospital was entitled to summary judgment). When reviewing a motion for summary judgment under the HCQIA, the plaintiff bears the burden of proving that a reasonable jury, examining all the facts in the light most favorable to the plaintiff, would find that the plaintiff has shown by a preponderance of the evidence that the professional review process failed the test for reasonableness as laid out in the HCQIA. *Gabaldoni,* 250 F.3d at 260.

### D. Application of the Test Outlined in the HCQIA: 42 U.S.C. § 11112(a) Standards

■ In applying the test outlined in § 11112(a), we begin with the presumption that the hospital has met the necessary standards for immunity unless this presumption is rebutted by a preponderance of the evidence. § 11112(a). The applicable standard is one of objective reasonableness, viewed in light of the totality of the circumstances. *Freilich,* 313 F.3d at 212 (quoting *Imperial v. Suburban Hospital Assoc.,* 37 F.3d 1026, 1030 (4th Cir.1994)). Reasonableness standards have been consistently upheld in the context of qualified immunity. *Freilich,* 313 F.3d at 213. Such standards are often applied in this context to afford the officials, or in this the case the doctors and hospital involved, sufficient latitude to properly perform discretionary functions. *Id.* The Fourth Circuit in *Imperial* interpreted the language of the first prong of the test, that the action be taken in the *reasonable belief* that quality health care was being furthered, as establishing a standard of objective reasonableness looking to the totality of the circumstances. *Imperial,* 37 F.3d at 1030. The Fourth Circuit reaffirmed this interpretation in *Freilich.* The Fourth Circuit then elaborated in *Freilich* stating that the objective reasonableness standard is a valid guide for peer review bodies. "The 'reasonable belief' standard embodies the discretion that health care professionals have traditionally exercised in determining whether or not their peers meet a requisite level of professional competence." *Freilich,* 313 F.3d at 212. The test consists of four-prongs and states that:

> [t]he peer review action must be taken (1) in the reasonable belief that the action was in furtherance of quality health care; (2) after a reasonable effort to obtain the facts of the matter; (3) after adequate notice and hearing procedures are afforded to the physician involved or after such other procedures as are fair to the physician under the circumstances; and (4) in the reasonable belief that the action was warranted by the facts known after such reasonable effort to obtain facts.

42 U.S.C. § 11112(a)(1)-(4). Each of these prongs will be discussed in turn.

## 1. Reasonable Belief That Action was in Furtherance of Quality Health Care

■ The first prong outlined in 42 U.S.C. § 11112(a)(1) requires that a peer review action be taken in the reasonable belief that it was in furtherance of quality health care. "This prong of the test is met if the reviewers, with the information available to them at the time of the professional review action would reasonably have concluded that their action would restrict incompetent behavior or would protect patients." *Brader v. Allegheny General Hospital,* 167 F.3d 832, 840 (3d Cir.1999). The HCQIA does not require that professional review activities actually better health care, but only that review actions be undertaken in the reasonable belief that quality health care was being furthered. *Imperial v. Suburban Hospital,* 37 F.3d 1026, 1030 (4th Cir.1994).

We begin with the presumption that the hospital has met this prong of the test. Dr. Wahi then has the burden of offering evidence sufficient to overcome this presumption. Dr. Wahi argues that the peer review action taken against him was not taken to further quality health care, but was an attempt by CAMC to unlawfully restrain competition in cardiac and thoracic surgery. As evidence, Dr. Wahi offers the outcomes of the investigations conducted against him. He points to the fact that in these investigations he was not found to have deviated from the standard of care.

He concludes that since he did not stray from the standard of care the actions could not have been taken in the reasonable belief of furthering quality health care, and that therefore the investigation was for anti-competitive reasons. This evidence does not rebut the presumption that the hospital acted reasonably, because it is not necessary that the actions actually improve health care or prove that Dr. Wahi provided substandard care, but instead that the hospital reasonably believe that some action is warranted. *Imperial,* 37 F.3d at 1030. As evidence of the hospital's anti-competitive motives, Dr. Wahi alleges that the investigation occurred after he met with staff from Bluefield Regional Hospital (Bluefield) and had a patient referred to him by that hospital. He states that CAMC only looked into his treatment of said patient, because he had been in touch with Bluefield about their interest in cardiac surgery. As support for this contention, Dr. Wahi cites his own deposition and his own affidavit. He offers nothing more than his personal belief that this action had an anti-competitive motive. Self-serving opinions without objective corroboration are not considered to be probative, and thus this evidence is irrelevant. *Evans v. Technologies Applications & Service, Co.,* 80 F.3d 954, 962 (4th Cir.1996).

The evidence that CAMC's actions were taken in the reasonable belief of furthering quality health care is overwhelming. CAMC took action after numerous reports and complaints surfaced regarding Dr. Wahi's competence and inability to practice within the scope of his privileges. The hospital offers the depositions of several doctors stating that Dr. Wahi continued to act outside the scope of his restrictions, and that his actions posed a threat of danger to patients. Even a letter from St. Francis, relied on by Dr. Wahi, states that he was suspended because he failed to practice within the self imposed limits of his privileges. Plaintiff's Exhibit 18.

A reasonable jury could not find that Dr. Wahi has shown by a preponderance of the evidence that the hospital's action was not taken in the reasonable belief that it was in the furtherance of quality health care. In fact, Dr. Wahi has failed to offer even a scintilla of relevant evidence to show that the hospital acted unreasonably. Dr. Wahi

has failed to rebut the presumption that the professional review action of CAMC was taken in the reasonable belief that it was in furtherance of quality health care.

## 2. Reasonable Effort to Obtain the Facts

The second prong in evaluating a claim for immunity is that the reviewing entity make a reasonable effort to obtain the facts. 42 U.S.C. § 11112(a)(2). This prong is met when "the totality of the process leading up to the Board's professional review action ... evidenced a reasonable effort to obtain the facts of the matter." *Brader v. Allegheny General Hospital,* 167 F.3d 832, 841 (3d Cir.1999).

Again we begin with the presumption that CAMC has made a reasonable effort to obtain the facts of the matter. The plaintiff offers nothing to rebut this presumption.

We find that no reasonable jury could find that CAMC took action without a reasonable effort to obtain the facts of the matter. CAMC enlisted the assistance and recommendations of numerous physicians and committees in conducting several investigations and peer reviews of Dr. Wahi and his patient care. CAMC has satisfied the second prong of this test.

## 3. Adequate Notice and Hearing Procedures, or Other Such Procedures as are Fair Under the Circumstances

The third prong of 42 U.S.C. § 11112(a) requires that the peer review action be taken after adequate notice and hearing procedures are afforded to the physician involved, or after such other procedures as are fair to the physician under the circumstances are provided. 42 U.S.C. § 11112(a)(3). This prong can be satisfied in a number of ways. The HCQIA provides that one way to ensure this prong

has been satisfied is for the hospital to fulfill the requirements of the HCQIA's safe harbor provision § 11112(b). We note, however, that failure to meet all the provisions outlined in § 11112(b) does not in itself constitute a failure to meet the adequate notice and hearing standards of subsection (a)(3). *Meyers v. Columbia/HCA Healthcare, Corp.,* 341 F.3d 461, 471 n. 6 (6th Cir.2003) (quoting language from § 11112(b)). The plain language of § 11112(a)(3) indicates that a hearing is not the only way to fulfill this prong. It can also be met by the provision of "such other procedures as are fair to the physician under the circumstances provided." § 11112(a)(3). This is in keeping with the test's overall standard of objective reasonableness in light of the totality of the circumstances.

We begin with the presumption that CAMC fulfilled the requirements of the third prong of this test. Dr. Wahi contends that CAMC failed to meet this prong, because it failed to comply with certain provisions of § 11112(b). In particular he alleges that CAMC did not set a hearing date, and did not provide him with a list of witnesses. We will first look at the evidence offered by Dr. Wahi to support his contention that he was not given adequate notice and hearing procedures or other such procedures fair to him under the circumstances. We will then look at the evidence provided by the hospital as to the procedures it provided. In order to rebut the presumption that the hospital met the third prong of this test, Dr. Wahi must show that a reasonable juror looking at the facts in the light most favorable to him, would find that he has shown by a preponderance of the evidence that the professional review process used by the hospital did not provide him adequate notice and hearing procedures or other pro-

cedures fair to him under the circumstances.

As evidence that CAMC failed to meet the third prong of the HCQIA immunity test, Dr. Wahi cites from the hospital's bylaws, and the HCQIA sections requiring the provision of a witness list and notice of the date of the hearing. He states in his brief to the court that this failure to follow procedures is sufficient by itself to deny immunity to the defendants under the HCQIA. This is clearly contradicted by the plain language of the HCQIA. The Act states in § 11112(b) that "a professional body's failure to meet the conditions described in this subsection [11112(b)] shall *not*, in itself, constitute failure to meet the standards of subsection (a)(3) of this section." *Meyers*, 341 F.3d at 471 n. 6 (quoting § 11112(b)) (emphasis added).

We now look at the procedures that were provided by CAMC to Dr. Wahi. CAMC corresponded with Dr. Wahi on numerous occasions regarding the proposed actions, his right to request counsel, a summary of his rights at any subsequent hearing, as well as, an opportunity to appear and speak at any committee meetings where concerns were raised regarding Dr. Wahi's privileges. CAMC first sent Dr. Wahi a letter on July 8, 1999, informing him that the Credentials Committee was considering denying his request for reappointment to the medical staff. In accordance with the hospital's Medical Staff Procedures Manual, this letter offered Dr. Wahi the opportunity to meet with the Credentials Committee. The letter also told Dr. Wahi when the next meeting would take place and informed him of the nature of the allegations and evidence against him. Defendant's Exhibit 27. Throughout July, CAMC kept Dr. Wahi informed of the allegations and investigations being conducted in a series of letters and meetings with Dr. Wahi. Defendant's

Exhibits 55, 29, 56, 57, 58, 60; and Plaintiff's Exhibit 8. Dr. Wahi acknowledges awareness of the allegations in a letter to the Dr. Crotty dated July 15, 1999. Defendant's Exhibit 55. In it he states:

> I understand questions have arisen regarding my treatment of this patient and whether or not the procedure performed was authorized under the privilege [sic] I currently hold at CAMC. I am writing to provide you with additional information which I ask the reviewer to consider.

Letter from Dr. Wahi to Dr. Crotty (Defendant's Exhibit 55).

In August, CAMC informed Dr. Wahi of the specific issues that would be discussed at the meeting and again invited him to attend the meeting. This letter states in relevant part:

> You will be informed of the general nature of the evidence supporting the action contemplated by the Credentials Committee at your meeting with them on August 17, 1999. You will be invited to discuss, explain, or refute it. This meeting is your opportunity to present the Committee with additional information that is pertinent to its evaluation ...

Letter from Dr. Crotty to Dr. Wahi dated August 14, 1999. (Defendant's Exhibit 64). Dr. Wahi does not dispute receiving any of the above mentioned correspondence.

Dr. Wahi's attorney, after receiving the above described correspondence, sent a letter to CAMC dated September 8, 1999, on Dr. Wahi's behalf, requesting a hearing pursuant to CAMC's Medical Staff Procedures Manual. Defendant's Exhibit 38. After a series of discussions between Dr. Wahi's attorney and CAMC, CAMC sent a letter dated December 2, 1999, with details about the hearing and stating the hearing would be held at a date convenient to all

parties. Defendant's Exhibit 41. By late December CAMC was still waiting to hear of a date that was amenable to Dr. Wahi and his counsel. On December 21, 1999, Cheryl A. Eifert, the Hearing Officer appointed by CAMC, sent a letter to Dr. Wahi's counsel stating, "I am also waiting to hear from you for the scheduling of the hearing requested by Dr. Wahi." Defendant's Exhibit 67.

In July of 2000, the hospital had a telephone conference with Dr. Wahi's counsel to resolve the matters in controversy between them, including Dr. Wahi's pending hearing request. Dr. Wahi's counsel at the time, George Guthrie, sent a letter to Cheryl Eifert attaching a proposal whose purpose was to resolve the matters without any litigation, administrative or otherwise. Defendant's Exhibit 68. These negotiations apparently fell through and in the fall of 2000, the two parties remained embroiled in discussions about the parameters and dates of a hearing. The hospital informed Dr. Wahi that it would not change the hearing procedures from those stated in the manual and that a hearing would be scheduled. In a letter dated October 11, 2000, Cheryl Eifert again requests that Dr. Wahi provide her with dates for the hearing. She writes in relevant part:

> I do request that you provide me with dates for the administrative hearing at your earliest convenience. I anticipate the hearing will take a number of days; therefore, I suggest that we select dates well enough in advance that all involved parties can clear their schedules.

Defendant's Exhibit 72.

In November of 2000, Dr. Wahi filed suit in Kanawha County Circuit Court to enjoin the proceedings. The Kanawha County Court refused to rule on the fairness of the hearing until after a hearing was held. No hearing has been conducted and this lawsuit has proceeded from that point.

Even though a hearing was not held, this court finds that the evidence offered by Dr. Wahi is insufficient for a reasonable jury to find that CAMC failed to fulfill its obligations under § 11112(a)(3) by a preponderance of the evidence. The overwhelming evidence is that CAMC acted in an objectively reasonable manner in light of the totality of the circumstances in this case and took sufficient measures to ensure Dr. Wahi received adequate notice of any hearing or meeting that was to occur in the proposed actions against him. The many letters between the parties illustrate the hospital's attempts to set a hearing at Dr. Wahi's request and give him notice of the hearing. Dr. Wahi was represented by counsel throughout the entire process and in the end, he was informed and fully aware of his rights, the hospital's policies, and the charges and evidence the hospital had against him. The hospital responded promptly when Dr. Wahi requested a hearing be scheduled.

The court finds that in light of the evidence presented by Dr. Wahi and by CAMC a reasonable jury could not conclude that Dr. Wahi has shown by a preponderance of the evidence that CAMC failed to provide him adequate process as required by § 11112(a)(3). CAMC has fulfilled the third prong of the HCQIA test.

### 4. Reasonable Belief that the Action was Warranted

The fourth prong to establish immunity, 42 U.S.C. § 11112(a)(4), requires that the reviewers have a reasonable belief that the action is warranted. In determining whether an action was warranted, the analysis is very similar to the analysis under § 11112(a)(1), thus the court does not repeat the arguments and analysis already addressed under 42 U.S.C.

§ 11112(a)(1). *Gabaldoni v. Washington County Hospital,* 250 F.3d 255, 263 n. 7 (4th Cir.2001).

■ Dr. Wahi argues that because some of the committees who reviewed his work and treatment of specific patients felt that he followed the necessary standard of care that his privileges should not have been suspended. For the action to be warranted, it is not necessary that every committee that reviews a physician come to the same conclusion. *Brader,* 167 F.3d at 843. Dr. Wahi has not put forth sufficient evidence to overcome the presumption that the hospital had a reasonable belief that its action was warranted. The hospital has satisfied the fourth prong of this test.

## C. Findings

In light of the above analysis, this Court finds that defendant is entitled to immunity under 42 U.S.C. § 11111(a). The plaintiff has failed to offer sufficient evidence upon which a reasonable jury, examining all the facts in the light most favorable to him, could find by a preponderance of the evidence that the professional review process failed the test for reasonableness as laid out in § 11112(a) of the HCQIA. As such defendants are entitled to immunity from damages for Counts I, II, III, and V.

## III. SUMMARY JUDGMENT ON THE REMAINING ISSUES

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgments as a matter of law. Fed.R.Civ.P. 56(c). In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Instead, the court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587–88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Although the court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor." *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505.

## A. Breach of Contract Claims

Dr. Wahi asserts two breach of contract claims in his complaint, one alleging a breach of contract due to CAMC's violation of its Medical Staff Procedures Manual, and the other alleging a civil rights violation under 42 U.S.C. § 1981. The definition of the term contract is more narrow for the former claim than for the latter. The court finds, for the reasons discussed below, that there was no contract between CAMC and Dr. Wahi for the purposes of the state law claim, and that a contract did exist for the purposes of his § 1981 claim. Each of these claims is discussed in full below.

### 1. State Law Breach of Contract Claim

■ Dr. Wahi claims that CAMC is contractually bound by the Medical Staff

Procedures Manual as part of its agreement with him. Dr. Wahi contends that CAMC breached its contract with him by failing to provide a hearing on his summary suspensions "as soon as practicable" and by failing to provide a fair hearing. Under West Virginia law, unless there is express language to the contrary, medical staff bylaws do not constitute a contract between hospital and physician. *Kessel v. Monongalia County General Hospital*, 215 W.Va. 609, 600 S.E.2d 321, 324 Syl. Pt. 4 (2004). In *Kessel*, the West Virginia Supreme Court found that because hospitals are required by law to enact medical staff bylaws, the necessary consideration to form a contract is lacking, thus hospital bylaws cannot be considered a contract between the hospital and the physician. *Kessel*, 600 S.E.2d at 324. In the case at hand, the bylaws contained in CAMC's Medical Staff Procedures Manual do not include express language creating a contract as required by the West Virginia Supreme Court. Dr. Wahi's claim fails because the bylaws do not constitute a contract under West Virginia law.

██ The physician does possess due process rights. Where it is alleged that a physician is guilty of professional incompetence or misconduct, the hospital is bound by the fair hearing procedural provisions contained in the medical staff bylaws, but this does not transform the bylaws into a contract. *Id.* at 326–27. The Supreme Court of West Virginia is concerned with whether a physician is given basic procedural due process protections. As long as a hospital's bylaws provide basic procedural protections, and these bylaws are substantially followed in a particular disciplinary proceeding, a court will usually not interfere with the committee's recommendation. *Mahmoodian v. United Hospital Center*, 185 W.Va. 59, 404 S.E.2d 750, 755–56 (1991). Finally, *Kessel* also

recognizes that federal legislation has been enacted to encourage all hospitals to use the same professional review procedures. *Kessel*, 600 S.E.2d at 330.

As discussed in section II.D.3, CAMC provided Dr. Wahi with notice of upcoming committee meetings, the nature of the charges against him, and outlined the rights and remedies available to him. There is no genuine issue of material fact as to whether CAMC substantially complied with the procedures outlined in its manual and with the federal standards outlined in the HCQIA. Therefore, summary judgment is **GRANTED** in favor of the defendant on the plaintiff's breach of contract claim.

### 2. 42 U.S.C. § 1981

#### a) Existence of a Contract

██ The court must now determine whether a contract exists between Dr. Wahi and CAMC for the purposes of § 1981. The bylaws, as discussed above, do not constitute a contract under West Virginia law between a hospital and a physician. Dr. Wahi does not allege any contractual rights based on his status as an at-will employee. Under § 1981, Dr. Wahi does, however, have some basic contractual rights based on his position as an at-will employee. In *Spriggs*, the Fourth Circuit held that an at-will employment relationship is contractual and can serve as the predicate contract for a § 1981 claim. *Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 278 (4th Cir.2000) (citing *Spriggs v. Diamond Auto Glass*, 165 F.3d 1015, 1018–19 (4th Cir.1999)). The definition of a contract under § 1981 simply requires that there be an offer of employment, an acceptance of that offer, and consideration in the form of labor. *Spriggs*, 165 F.3d at 1018. Dr. Wahi applied to be re-credentialed at CAMC, CAMC then offered to extend privileges to Dr. Wahi, and Dr.

Wahi accepted the offer and began performing services at CAMC in exchange for pay.

### b) Statute of Limitations

There are two issues to address in assessing Dr. Wahi's § 1981 breach of contract claim. The first is whether the statute of limitations has run on his claim, and if it has not whether his claim survives summary judgment. Section 1981 does not contain a statute of limitations. When this is the case, a court must determine whether the relevant section of the statute was enacted before or after December 1, 1990. If enacted before December 1, 1990, the statute of limitations should generally be determined by adhering to the most analogous state statute of limitations. For laws enacted after December 1, 1990, and not containing a statute of limitations, Congress enacted a four year catchall statute of limitations in 28 U.S.C. § 1658. *Jones v. R.R. Donnelley & Sons*, 541 U.S. 369, 371, 124 S.Ct. 1836, 158 L.Ed.2d 645 (2004).

The statute at issue here is 42 U.S.C. § 1981, first enacted in 1866. Thus it would first appear that we should apply the most analogous state statute of limitations. For claims arising under § 1981, however, the analysis does not end here, because Congress passed a major amendment to the statute which went into effect on November 21, 1991. Civil Rights Act of 1991, Pub.L. No. 102–166, § 101, 105 Stat. 1071 (1991). In this amendment, Congress defined the term "to make and enforce contracts." This amendment added subsections (b) and (c) to § 1981. These new subsections state:

> (b) For the purposes of this section, the term 'make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship. (c) the rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of state law.

*Id.*

When determining the statute of limitations for a cause of action under § 1981, a court must decide whether the suit arises under the 1991 amendment or under the statute as originally enacted. If the plaintiff's claim was made possible because of the post–1990 enactment, it is governed by § 1658's four year statute of limitations. *Jones*, 541 U.S. at 382, 124 S.Ct. 1836.

In the present case, Dr. Wahi's cause of action under § 1981 was made possible by the 1991 amendment and thus is subject to the four year statute of limitations. Prior to 1991, Dr. Wahi would not have been able to bring a cause of action for the alleged harassing and discriminatory conduct that he faced after the formation of his contract with CAMC. *See Jones*, 541 U.S. at 383, 124 S.Ct. 1836 (finding that a claims for hostile work environment were only possible under the post–1990 amendment to § 1981 and therefore the four year statute of limitations applied).

In determining when the statute of limitations begins to accrue on a § 1981 action, the "proper focus is on the time of the discriminatory act, not the point at which the consequences of the act become painful." *Chardon v. Fernandez*, 454 U.S. 6, 8, 102 S.Ct. 28, 70 L.Ed.2d 6 (1981). Section 1981 claims for wrongful termination accrue on the date the employer notifies the employee that he is being terminated. *Nghiem v. U.S. Department of Veteran Affairs*, 451 F.Supp.2d 599, 604–05, 2006 WL 2572658 *4 (S.D.N.Y.2006). *See also Chardon v. Fernandez*, 454 U.S.

6, 8, 102 S.Ct. 28, 70 L.Ed.2d 6 (1981) (stating that the relevant date is when the employee is denied tenure).

■ In the present case, Dr. Wahi was notified by letter on July 30, 1999, that his medical staff privileges at CAMC were being summarily suspended. Defendants Exhibit 32. This suspension is the alleged discriminatory act at issue in this case. Dr. Wahi alleges three later dates on which the statute of limitations could have started to run. There were no subsequent actions taken after July 30, 1999, that further affected Dr. Wahi's ability to enjoy his contractual rights under § 1981, including the rights to "enjoyment of all benefits, privileges, terms, and conditions of [his] contractual relationship." § 1981(b). Thus, this court is convinced that the relevant date for determining when the statute of limitations began to run is July 30, 1999. Therefore, the statute of limitations has run on Dr. Wahi's § 1981 claim, and his claim is barred.

### c) 42 U.S.C. § 1981 Analysis

■ For purposes of this brief analysis it will be taken as true that Dr. Wahi has an employment contract with CAMC and that the statute of limitations has not run on Dr. Wahi's cause of action. Section 1981 grants all persons within the jurisdiction of the United States "the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a). In order to survive a motion for summary judgment, a plaintiff under § 1981 may proceed through two avenues of proof. He can either illustrate direct evidence of discrimination or he can proceed under the burden shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Since Dr. Wahi does not present any direct evidence of intentional discrimination on the part of CAMC,

he must proffer sufficient circumstantial evidence to satisfy the *McDonnell Douglas* analytical framework. *Williams v. Staples, Inc.*, 372 F.3d 662, 667 (4th Cir.2004). Under this framework, the plaintiff must first establish a *prima facie* case of discrimination, the defendant may respond with a legitimate, nondiscriminatory reason, and then the plaintiff may adduce evidence to show that the defendant's proffered reason was mere pretext and that race was the real reason for disparate treatment. *Id.* (citing *Hawkins v. Pepsi-Co, Inc.*, 203 F.3d 274, 278 (4th Cir.2000)). In assessing whether the plaintiff has provided sufficient evidence such that his case may proceed to trial, this court's decision is informed by the summary judgment standard. *Hux v. Newport News*, 451 F.3d 311, 315 (4th Cir.2006).

■ The first prong of the framework is for the plaintiff to establish a *prima facie* case of discrimination. The test for proving *prima facie* disparate disciplinary practices consists of the following three elements: (1) the plaintiff is a member of a protected class; (2) the prohibited conduct in which the plaintiff engaged was as serious as the misconduct of employees outside the protected class; and (3) the employer imposed harsher disciplinary measures against plaintiff than against employees outside the protected class. *Carter v. Ball*, 33 F.3d 450, 460 (4th Cir. 1994) (citing *Cook v. CSX Transp. Corp.*, 988 F.2d 507, 511 (4th Cir.1993)).

■ Dr. Wahi is a member of a protected class. He alleges in his affidavit that Caucasian doctors have engaged in more serious misconduct, but have had no disciplinary measures taken against them. Assuming *arguendo* that Dr. Wahi has made out a *prima facie* case of race discrimination the burden now shifts to CAMC to articulate some legitimate nondiscriminatory reason for its action.

*O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 311, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996) (internal quotation marks omitted). Once CAMC meets this burden, Dr. Wahi must prove that CAMC's proffered reason was mere pretext and that race was the real reason for the discrimination. *Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 278 (4th Cir.2000).

CAMC states that it disciplined Dr. Wahi out of concern for the health and safety of his patients. CAMC offers evidence that Dr. Wahi was disciplined because his practices were not safe and exposed patients to unacceptable risk. Although Dr. Wahi disputes accepting the findings of the Third Review Committee, he voluntarily relinquished his privileges in 1995. After additional training, Dr. Wahi was allowed to return to practice at CAMC with severe restrictions on his privileges, and when those restrictions were violated, CAMC took action. In light of these uncontroverted facts, CAMC has met its burden by providing evidence that it acted out of these health and safety concerns and not because Dr. Wahi is Indian.

■ Dr. Wahi now has the burden of showing that the hospital's legitimate, nondiscriminatory justifications for its actions were pretextual. The limited evidence that Dr. Wahi offers to support his contentions that CAMC's reasons were pretextual consists of his self-serving affidavit. In his affidavit he makes accusations against various colleagues pointing to instances where he believes they provided substandard health care resulting in the deaths of multiple patients. He then notes that none of these colleagues were disciplined, and concludes that this was due to race. Dr. Wahi also alleges racial discrimination on the part of the committee, because some of its members were of Pakistani descent, and he believes that they discriminated against him because he is Indian and Hindu. These allegations are not supported by objective evidence. A plaintiff cannot establish pretext by relying on criteria of his own choosing when the employer based its decision on other grounds. *Hux*, 451 F.3d at 315 (quoting *Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 271 (4th Cir.2005)). Self-serving opinions, without corroborating objective evidence, are not considered to be significantly probative. *See Evans v. Technologies Applications & Service Co.*, 80 F.3d 954, 962 (4th Cir.1996) (finding district court's decision to strike portions of plaintiff's affidavit not improper as the portions struck contained self-serving opinions and unsupported assertions of colleagues' qualifications). Generally, an affidavit filed in opposition to a motion for summary judgment must present evidence in substantially the same form as if the affiant were testifying in court. *Id.* Summary judgment affidavits cannot be conclusory or based on hearsay. *Id.* Additionally, Dr. Wahi's affidavit does not offer any evidence that these were similarly situated physicians. Dr. Wahi already had restrictions placed on his practice. He does not contend that these other physicians were operating under similar restrictions.

Plaintiff's attempt to find pretext in the hospital's neutral explanation consists of comparing himself to various physicians based on his personal observations. He cannot simply compare himself to other physicians based on his personal evaluation of their care. His evaluations of other physicians' practices are irrelevant to the validity of CAMC's explanation for its actions. *See Hux*, 451 F.3d at 315 (noting that a plaintiff cannot establish pretext by relying on criteria of her choosing when the employer based its decision on other grounds) (quoting *Anderson*, 406 F.3d at 271). The evidence presented by Dr. Wahi

fails to cast doubt on the validity of CAMC's explanation, and therefore does not create a genuine dispute. Dr. Wahi's response to CAMC's neutral explanation for it's action is not sufficient to overcome the summary judgment standard. Therefore even if the statute of limitations has not run, the court would grant CAMC's motion for summary judgment on the § 1981 claim.

### B. 42 U.S.C. § 1983

██ Dr. Wahi alleges that CAMC and the Board of Medicine conspired to deny him his medical license. "To establish a civil conspiracy under section 1983, Appellants must present evidence that the Appellees acted jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted in Appellants' deprivation of a constitutional right." *Hinkle v. City of Clarksburg*, 81 F.3d 416, 421 (4th Cir.1996). "Appellants have a weighty burden to establish a civil rights conspiracy. While they need not produce direct evidence of a meeting of the minds, Appellants must come forward with specific circumstantial evidence that each member of the alleged conspiracy shared the same conspiratorial objective." *Id.* In order to survive a properly supported summary judgment motion, plaintiff's evidence must, at least, reasonably lead to the inference that defendants positively or tacitly came to a mutual understanding to try to accomplish a common and unlawful plan. *Id.*

██ In the case at hand, Dr. Wahi does not offer even a scintilla of evidence that there was communication between CAMC and the Board of Medicine beyond that required by law. Each letter or meeting that he identifies is one required by the state and federal reporting laws. The HCQIA requires that any time a health care entity takes a professional re-view action that adversely affects the clinical privileges of a physician for a period of longer than thirty days it must report this action to the Board of Medicine. *Fobbs*, 789 F.Supp. at 1063 (quoting language from 42 U.S.C. § 11133(a)(1)).

To support his contention, Dr. Wahi states that CAMC reported him to the Board of Medicine and the Data Bank on various occasions leading the Board of Medicine to investigate him. He notes that he was investigated three times and on all three occasions the charges were dismissed due to lack of evidence. Dr. Wahi has offered no evidence that defendants and the Board of Medicine were not meeting simply to fulfill their obligations and rights under the HCQIA 11133(a)(1) and West Virginia Code § 30-3-14(b) reporting requirements. He has offered no evidence on this issue from which a reasonable juror could return a verdict in his favor. Therefore, the court **GRANTS** CAMC's motion for summary judgment on Dr. Wahi's § 1983 claim.

### IV. REQUESTS FOR INJUNCTIVE RELIEF

The HCQIA does not provide immunity from injunctive relief. *Imperial*, 37 F.3d at 1030. However, because Dr. Wahi fails to make any argument or allege any facts that would entitle him to injunctive relief this court **GRANTS** defendants' Motions for Summary Judgment on Count I, Count II, and Count V.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.