PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

RAKESH WAHI,

             *Plaintiff-Appellant,*

        v.

CHARLESTON AREA MEDICAL
CENTER, INCORPORATED, a West
Virginia Corporation; GLENN
CROTTY; JOHN DOES I-X,

             *Defendants-Appellees,*

          and

JANE DOES I-X; JAMAL KAHN; H.
RASHID; K. C. LEE; ANDREW
VAUGHN; JOHN L. CHAPMAN,

             *Defendants.*

 

ASSOCIATION OF AMERICAN
PHYSICIANS AND SURGEONS,
INCORPORATED,

     *Amicus Supporting Appellant.*

> No. 06-2162

Appeal from the United States District Court
for the Southern District of West Virginia, at Charleston.
Joseph R. Goodwin, Chief District Judge.
(2:04-cv-00019)

Argued: December 2, 2008

Decided: April 10, 2009

Before GREGORY and AGEE, Circuit Judges, and Rebecca Beach SMITH, United States District Judge for the Eastern District of Virginia, sitting by designation.

---

Affirmed by published opinion. Judge Agee wrote the opinion, in which Judge Gregory and Judge Smith joined.

---

**COUNSEL**

**ARGUED:** Kenneth Winston Starr, PEPPERDINE UNIVERSITY SCHOOL OF LAW, Malibu, California, for Appellant. Richard D. Jones, FLAHERTY, SENSABAUGH & BONASSO, P.L.L.C., Charleston, West Virginia, for Appellees. **ON BRIEF:** John C. Yoder, Harpers Ferry, West Virginia, for Appellant. David S. Givens, FLAHERTY, SENSABAUGH & BONASSO, P.L.L.C., Wheeling, West Virginia, for Appellees. Andrew L. Schlafly, Far Hills, New Jersey, for Amicus Supporting Appellant.

---

**OPINION**

AGEE, Circuit Judge:

Rakesh Wahi, M.D., appeals the district court's judgment dismissing his numerous state and federal claims brought against Charleston Area Medical Center, Inc. ("CAMC") regarding the suspension of his medical privileges. The district court concluded most of Wahi's claims were barred because CAMC qualified for immunity from suit under the Health Care Quality Improvement Act ("HCQIA" or "the Act"), 42 U.S.C.A. § 11101, *et seq.* (West 2005). For this reason, and because the district court found Wahi's other claims failed on the merits, the court awarded CAMC and Dr. Glenn

Crotty[1] summary judgment. For the reasons set forth below, we affirm the judgment of the district court.

## I.

CAMC is a privately-run hospital operating in Charleston, West Virginia. Wahi, who is licensed to practice medicine in West Virginia, began working as a cardio-thoracic surgeon at CAMC in January 1993. (J.A. 98.) The following year, Wahi started his own practice, but retained clinical privileges at CAMC. Around the same time, he began discussions with a Beckley, West Virginia medical group about the possibility of associating with them. In November 1996, CAMC temporarily suspended Wahi's hospital privileges and, as required by statute, it notified the National Practitioner's Data Bank ("NPDB"),[2] of Wahi's suspension. CAMC later reinstated Wahi's clinical privileges on a provisional basis.[3] (J.A. 49; 294; 511-16.) Following Wahi's reinstatement, CAMC received reports of and investigated several allegations that Wahi violated the terms of his provisional clinical privileges, which again resulted in temporary suspensions of Wahi's privileges in 1998 and 1999. From 1996 to 1999, CAMC, as required by statute, reported Wahi to the NPDB a total of five

---

[1]Dr. Crotty served as Executive Vice President and Chief Medical Officer at CAMC during the relevant period of Wahi's employment; he is now the Chief Operating Officer at CAMC. (J.A. 70, 117.)

[2]The NPDB is a national clearinghouse designed to prevent incompetent doctors from simply moving to a new state that could not discover their prior poor performance. Under the HCQIA, hospitals are generally required to report to the NPDB adverse professional review action "affect[ing] the clinical privileges of a physician." *See* 42 U.S.C.A. § 11133(a)(1)(A) (West 2005).

[3]Wahi's status and privileges changed in subsequent periods, but at all relevant times, he only possessed provisional privileges at CAMC and he was subject to numerous restrictions, such as being required to get another doctor's approval before performing certain procedures and to have a proctor present during other procedures. Wahi was also barred from performing some procedures entirely. (J.A. 516-33, 655.)

times, although the exact nature of each of the reports before 1999 is not in the record. These prior suspensions and investigations are not at issue in this appeal.[4] (J.A. 50, 517-71.)

At the time of the events in question, Wahi was exercising provisional privileges at CAMC, and had requested reappointment for "an additional year ending February 26, 2000."[5] (J.A. 532-33, 572.) In May 1999, the CAMC Credentials Committee[6] ("Credentials Committee") recommended that Wahi's request be granted, but that his privileges remain restricted "as currently in place with intensified review as outlined in the Medical Staff Procedures Manual."[7] (J.A. 532.)

By letter dated July 8, 1999, the Credentials Committee notified CAMC's Chief of Staff, **[REDACTED]**, that it was rescinding its earlier recommendation to renew Wahi's provisional clinical privileges.[8] This decision was made after

---

[4]CAMC also filed several reports regarding Wahi's professional conduct with the West Virginia Board of Medicine.

[5]Under CAMC policy, an application for reappointment automatically extends the current appointment period until the request is acted on. (J.A. 477; Procedures Manual 2.1.1.1.) Wahi's application thus extended his previous year's appointment until final disposition of his application for reappointment.

[6]The Credentials Committee is composed of "one representative from each of [CAMC's] Medical Staff Departments" and two non-physician non-voting members of the Board. It is charged with investigating the "character, professional competence, qualifications and ethical standing of" CAMC physicians who have "completed applications for appointment or reappointment to the medical Staff," as well as requests for changes in privileges. The Credentials Committee then makes a recommendation to the Board on all such matters. (Bylaws 8.3.1, 8.3.2.1.) (J.A. 464.)

[7]Three documents set forth the rights and responsibilities between CAMC and its medical staff: the Medical Staff Procedures Manual ("Procedures Manual"), Medical Staff Bylaws ("Bylaws"), and Medical Staff Rules & Regulations.

[8]The district court incorrectly identified this letter as one addressed directly to Wahi. There is no indication in the record that Wahi received a copy of this letter or was made aware of the Credentials Committee's recommendation at that time.

receiving information that Wahi performed a **[REDACTED]**, which he was not permitted to do under the terms of his provisional clinical privileges. The Credentials Committee had also been apprised that Wahi failed to notify CAMC, as required by the by-laws, that he had voluntarily relinquished his clinical privileges at another hospital. The Credentials Committee requested "an investigation and appropriate suspension of Dr. Wahi's clinical privileges" in light of this new information of Wahi's continued failure to comply with the terms of his provisional clinical privileges. The Credentials Committee informed **[REDACTED]** that its recommendation had not been communicated to the CAMC Board of Trustees, and that Wahi would be given the opportunity to meet with them "prior to any final recommendation." (J.A. 572-73.)

By letter dated July 16, 1999, **[REDACTED]** informed Wahi that he had been requested to investigate the two claims raised in the Credentials Committee's letter. **[REDACTED]** asked Wahi to "respond to each of the [allegations] in writing as soon as possible." Attached to the letter were the relevant portions of the Bylaws pertaining to the alleged violations. (J.A. 115, 575-76.)

Between July 16 and July 30, in addition to meeting with **[REDACTED]** to discuss the July 16 letter requesting additional information from Wahi, Wahi wrote to **[REDACTED]**, **[REDACTED]**, and the Chairman of the Credentials Committee in order to provide an explanation of the events surrounding the allegations against him. The Credentials Committee scheduled a meeting with Wahi for August 3, 1999 to review his performance and consider his application, which was later rescheduled for August 17, 1999, at Wahi's request. (J.A. 742.)

On July 30, 1999, **[REDACTED]** summarily suspended Wahi's hospital privileges at CAMC. (J.A. 50.) By letter on the same date, CAMC formally notified Wahi that his "clinical privileges [were] hereby summarily suspended pursuant to

Section 2.4.1, *Grounds for Summary Suspension* of the Procedures Manual, 'for the best interest of patient care.'" (J.A. 117.) His suspension was to "continue until resolution of [Wahi's] request for reappointment and any appeal/hearing, if requested, has been completed." (J.A. 117.) A copy of Article III of the Procedures Manual was attached to the letter, and Wahi was informed that he "may wish to avail [himself] of any rights available to [him] under Article III." (J.A. 117, 586.)

From the time of his suspension through the Credentials Committee meeting, Wahi engaged in ongoing correspondence and discussions with CAMC regarding preparation for that meeting and his application to renew clinical privileges. (See, e.g., J.A. 118-30, 654.) On August 17, 1999, the Credentials Committee met and Wahi testified, providing his response to the allegations against him. The Credentials Committee recommended denying Wahi's application for reappointment in a detailed August 26, 1999 letter. (J.A. 644-46.) By a separate letter, also dated August 26, 1999, CAMC informed Wahi of the denial of his request for reappointment of his clinical privileges and of his right to a hearing regarding this decision under Article III of the Procedures Manual. (J.A. 644-47.)

On September 8, 1999, Wahi, by counsel, requested a hearing regarding both his suspension and the decision not to renew his clinical privileges. On September 13, 1999, CAMC reported Wahi's summary suspension to the NPDB, (J.A. 962.), and to the West Virginia Board of Medicine. (J.A. 701.)

Correspondence during the next several months indicates on-going discussions between Wahi and CAMC regarding Wahi's access to his medical affairs/quality assurance file, his dislike of the composition of the hearing panel, and other aspects of the conduct of a hearing. CAMC repeatedly asked Wahi to provide "a series of convenient dates . . . for the scheduling of" the requested hearing. (J.A. 762-63, 776.)

Wahi has never provided CAMC with any dates on which he would be available for a hearing, and a hearing date was never set. (J.A. 760.)

In November 2000, Wahi filed a complaint in West Virginia state court requesting that the court intervene in the CAMC peer review process, declare certain of CAMC's actions invalid, require CAMC to withdraw its reports to the NPDB and state Board of Medicine, and require a court-administered hearing that satisfied Wahi's various demands. (J.A. 99-114.) The West Virginia court ultimately dismissed the action on December 6, 2001, after concluding that Wahi was not entitled to the relief he sought because the peer review process was still ongoing. It declined to "render advisory opinions" or accept Wahi's "speculation" that he would receive an unfair hearing. (J.A. 143, 131-46.)

For a while, discussions between Wahi and CAMC continued after the state court case ended, with both parties setting forth various parameters and details of the conduct of a hearing. Then discussions halted,[9] with the parties never reaching an agreement or conducting or scheduling a hearing. In January 2004, Wahi filed a complaint in the United States District Court for the Southern District of West Virginia.

The complaint alleged numerous state and federal claims, including Anti-Trust violations of the Sherman Act, against CAMC and other defendants.[10] (R. 3.) CAMC filed a motion

---

[9]As a result of CAMC's September 1999 report to the Board of Medicine, the Board undertook an investigation into Wahi's suspension and ultimately filed a complaint against him in September 2001 to determine whether disciplinary action should be taken regarding Wahi's license to practice medicine. After protracted proceedings, the Board of Medicine ultimately dismissed the charges in November 2003 without reaching a decision on the merits of the allegations. (J.A. 147-180, 254-55, 701.)

[10]The claims against all but one of the other defendants, Dr. Crotty, were subsequently dismissed from the suit, see R. 12 and 88, and are not before us in this appeal.

for summary judgment, which the district court construed as a motion to dismiss pursuant to Rule 12(b)(6). (J.A. 48.) By order dated October 27, 2004, the district court dismissed the Sherman Act claims for failure to allege an effect on interstate commerce, but granted Wahi leave to amend to remedy that omission. (J.A. 59-61.) The district court also dismissed all but one of Wahi's § 1983 claims against CAMC, finding "utterly without merit" Wahi's assertion that CAMC acted "under color of state law" because it reported him to the NPDB. (J.A. 61-62.) Lastly, it dismissed Wahi's state invasion of privacy or wrongful disclosure claim, concluding that "a plain reading of [the HCQIA] means that only the information contained in a report to the [NPDB], and not the mere fact that a report was made, is protected as confidential." (J.A. 63-64.)

Wahi then filed an amended complaint reiterating the claims the district court had not dismissed in its October 2004 order, and amending the Sherman Act claims to include allegations of an effect on interstate commerce. (J.A. 68-93.) Wahi's amended complaint alleged the following claims: (1) Anti-Trust Conspiracy, in violation of the Sherman Act, 15 U.S.C. § 1 (2000); (2) Anti-Trust Monopolization, in violation of the Sherman Act, 15 U.S.C.A. § 2 (West 1997 & Supp. 2008); (3) breach of contract and implied covenant of good faith and fair dealing; (4) conspiracy to deny his constitutional right to due process, in violation of 42 U.S.C.A. § 1983 (West 2005); (5) defamation; and (6) violation of his civil rights under 42 U.S.C.A. § 1981 (West 2005).[11] Wahi also sought a declaration "that the reports made by [CAMC] to the NPDB are invalid and contrary to law," the removal of CAMC's "derogatory reports concerning [Wahi] from the NPDB," the reinstatement of Wahi's hospital privileges, actual and punitive damages, attorneys fees, and costs. (J.A. 92.) Wahi's overarching contention was that CAMC's decisions to sus-

---

[11]Additional claims were subsequently voluntarily dismissed and are not at issue on appeal. (J.A. 12; R. 61.)

pend him and deny his application for reappointment were taken in bad faith to prevent competition by monopolizing the field of cardiac surgery in the region and to prevent him from practicing medicine. (J.A. 68-92.)

By order dated September 29, 2006, the district court granted motions by CAMC and Dr. Crotty for summary judgment on all counts. *Wahi v. Charleston Area Med. Ctr.*, 453 F. Supp. 2d 942 (S.D.W. Va. 2006). (J.A. 262-91.) The court held that CAMC qualified for immunity under the HCQIA from all of Wahi's claims for damages. In so doing, it analyzed each of the four components that a professional review action must possess in order to qualify for immunity, as set forth in 42 U.S.C. § 11112(a), and concluded that CAMC fulfilled each requirement. *Id.* at 948-55. (J.A. 266-79.) Regarding the fact that CAMC never held a hearing regarding Wahi's suspension, the district court found

> that the evidence offered by Dr. Wahi is insufficient for a reasonable jury to find that CAMC failed to fulfill its obligations under § 11112(a)(3) by a preponderance of the evidence. The overwhelming evidence is that CAMC acted in an objectively reasonable manner in light of the totality of the circumstances in this case and took sufficient measures to ensure Dr. Wahi received adequate notice of any hearing or meeting that was to occur in the proposed actions against him. The many letters between the parties illustrate the hospital's attempts to set a hearing at Dr. Wahi's request and give him notice of the hearing. Dr. Wahi was represented by counsel throughout the process and in the end, he was informed and fully aware of his rights, the hospital's policies, and the charges and evidence the hospital had against him. The hospital responded promptly when Dr. Wahi requested a hearing be scheduled.

*Id.* at 954. (J.A. 278.) The district court concluded the HCQIA immunity protected CAMC against Wahi's claims for violations of the Sherman Act, breach of contract,[12] and defamation. *Id.* at 955. (J.A. 279.) Recognizing that the HCQIA does not afford immunity from claims for injunctive relief, the district court dismissed those claims based on its conclusion that "Wahi fail[ed] to make any argument or allege any facts that would entitle him to injunctive relief."[13] *Id.* at 960. (J.A. 289-90.). The district court recognized that the HCQIA does not provide immunity from claims alleging civil rights violations, but granted CAMC summary judgment on Wahi's § 1983 conspiracy to deny due process claim because "Wahi [did] not offer even a scintilla of evidence that there was communication between CAMC and the Board of Medicine beyond that required by law." *Id.* (J.A. 288-89.) Accordingly, the district court awarded summary judgment to CAMC and dismissed Wahi's case with prejudice. *Id.* (J.A. 291.)

Wahi noted a timely appeal, (J.A. 292-93), and we have jurisdiction under 28 U.S.C.A. § 1291 (West 2006).

II.

On appeal, Wahi's primary argument is that the district

---

[12]The district court also provided an alternative basis for the granting of summary judgment as to Wahi's breach of contract claim: CAMC complied with the procedures outlined in its Procedures Manual and those required by federal law, and that CAMC's Bylaws did not constitute a contract under West Virginia law, so any violation of the Bylaws could not constitute a breach of contract. *Id.* at 955-56. (J.A. 280-82.)

[13]It also held that Wahi's § 1981 claim was barred by the applicable statute of limitations and also failed on the merits because Wahi had not proven CAMC's race-neutral reason for its actions were pretextual. *Id.* at 957-60. (J.A. 282-88.) Because Wahi does not challenge the district court's disposition of this claim, it is not before us on appeal. *See* Fed. R. App. P. 28(a)(9)(A); *see also 11126 Baltimore Boulevard, Inc. v. Prince George's County*, 58 F.3d 988, 993 n.7 (4th Cir. 1995) (en banc) (involving predecessor to Federal Rule of Appellate Procedure 28(a)(9)(A)).

court erred in holding that CAMC[14] was entitled to immunity under the HCQIA even though CAMC summarily suspended Wahi "without notice or a hearing." Wahi also contends that the district court erred in dismissing his claims seeking injunctive relief because the HCQIA only provides immunity from suits for damages. In addition, Wahi challenges the district court's determination that CAMC was not a state actor and therefore was not amenable to suit under 42 U.S.C.A. § 1983 (2005). Lastly, Wahi asserts the district court erred in dismissing his state law defamation, breach of confidentiality, and breach of contract claims. We address each argument below.

## A.    HCQIA Immunity

Wahi asserts the district court erred in determining CAMC was entitled to immunity under the HCQIA because CAMC never held a hearing regarding Wahi's suspension, and therefore did not satisfy the requirements for claiming immunity under the Act. (Br. Appellant 18-30; Reply Br. 2-15.) However, we conclude the district court did not err in determining CAMC was entitled to immunity under the particular facts of this case.

The HCQIA provides a "professional review body"[15] with

---

[14]In his opening brief, Wahi states that he "is also appealing the dismissal of Dr. Crotty as a co-defendant," even though he refers to CAMC as the "Appellant." (Br. Appellant 3.) The district court similarly analyzed the claims against CAMC and Dr. Crotty together. We will invoke a similar convention, referring only to CAMC, but including Dr. Crotty in the analysis for the claims Wahi brought against him.

[15]"The term 'professional review body' means a health care entity and the governing body or any committee of a health care entity which conducts professional review activity, and includes any committee of the medical staff of such an entity when assisting the governing body in a professional review activity." 42 U.S.C.A. § 11151(11) (West 2005).

immunity from damages whenever a "professional review action"[16] is taken:

> (1) in the reasonable belief that the action was in the furtherance of quality health care,
>
> (2) after a reasonable effort to obtain the facts of the matter,
>
> (3) after adequate notice and hearing procedures are afforded to the physician involved or after such other procedures as are fair to the physician under the circumstances, and
>
> (4) in the reasonable belief that the action was warranted by the facts known after such reasonable effort to obtain facts and after meeting the requirement of paragraph (3).

42 U.S.C.A. § 11112(a) (West 2005). "A professional review action shall be presumed to have met the preceding standards necessary for [immunity] unless the presumption is rebutted by a preponderance of the evidence." *Id.*

---

[16]A "professional review action" is:

an action or recommendation of a professional review body which is taken or made in the conduct of professional review activity, which is based on the competence or professional conduct of an individual physician (which conduct affects or could affect adversely the health or welfare of a patient or patients), and which affects (or may affect) adversely the clinical privileges, or membership in a professional society, of the physician. Such term includes a formal decision of a professional review body not to take an action or make a recommendation described in the previous sentence and also includes professional review activities relating to a professional review action.

42 U.S.C.A. § 11151(9) (West 2005).

Due to the presumption of immunity under the HCQIA, a court applies an "unconventional standard in determining" whether summary judgment is appropriate — "whether a reasonable jury, viewing all facts in a light most favorable to [Wahi], could conclude that he had shown, by a preponderance of the evidence, that [CAMC's] actions fell outside the scope of section 11112(a)." *Gabaldoni v. Washington County Hosp. Ass'n*, 250 F.3d 255, 260 (4th Cir. 2001). In determining whether a health care entity has met these four requirements, the Court applies an objective test that "looks to the totality of the circumstances" to determine whether the action satisfies the § 11112(a) provisions. *Imperial v. Suburban Hosp. Ass'n*, 37 F.3d 1026, 1030 (4th Cir. 1994).

In a footnote in his opening brief, Wahi contends that even though the "primary focus of this appeal is the failure of CAMC to schedule a hearing," as required under subsection 3 of § 11112(a), the "first, second and fourth prongs of the test [for immunity under the HCQIA] were also not met." (Br. Appellant 29 n.11.) Other than this declarative sentence, Wahi fails to raise any argument to support his claim that the first, second, and fourth prongs of the subsection (a) immunity criteria were not met.[17] Federal Rule of Appellate Procedure 28(a)(9)(A) requires that the argument section of an appellant's opening brief must contain the "appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies." Because Wahi has failed to comply with the specific dictates of Rule 28(a)(9)(A), we conclude that he has waived his claims as to the first, second, and fourth requirements of the subsection (a) HCQIA immunity test on appeal. *See 11126 Baltimore Boulevard, Inc.*, 58 F.3d at 993 n.7 (involving predecessor to Federal Rule of Appellate Procedure 28(a)(9)(A)). Accordingly, our review regarding the immunity issue is limited to whether the district court erred in determining that Wahi did not over-

---

[17]Unless otherwise indicated, references to "subsection __" will refer to subsections of 42 U.S.C. § 11112.

come the presumption that CAMC satisfied the requirements of subsection (a)(3).

A health care entity is "deemed to have met the adequate notice and hearing requirement of" § 11112(a)(3) when it satisfies the safe harbor provisions of § 11112(b). Wahi argues that because CAMC failed to follow the provisions of subsection (b), it does not qualify for immunity under the HCQIA. However, as the district court properly recognized, (J.A. 275), following the provisions of subsection (b) is but one way a health care entity can comply with the requirements of subsection (a)(3). While a health care entity is "deemed to have met" the subsection (a)(3) immunity requirements by following the safe harbor provisions of subsection (b), those provisions are not exclusive. "[F]ailure to meet the conditions described [in subsection (b)] shall not, in itself, constitute failure to meet the standards of subsection (a)(3)." § 11112(b)(3). Therefore, Wahi's argument that CAMC is not entitled to immunity, as a matter of law, because it did not comply with all of the provisions in subsection (b), fails under the plain language of the statute.

Wahi next asserts that CAMC is not entitled to immunity because it failed to satisfy the exceptions from immunity carved out in § 11112(c). Wahi contends that since CAMC summarily suspended him for more than 14 days without first finding that he posed an imminent danger to his patients and without conducting a post-suspension investigation, CAMC cannot claim immunity under the HCQIA. Wahi misreads the statute. Subsection (c) sets forth limited circumstances in which a health care entity can act with immunity without satisfying all of the conditions in subsection (a). Subsection (c) provides in pertinent part:

> For purposes of section 11111(a) of this title, nothing in this section shall be construed as –
>
> (1) requiring the procedures referred to in subsection (a)(3) of this section –

  (A) where there is no adverse professional review action taken, or

  (B) in the case of a suspension or restriction of clinical privileges, for a period of not longer than 14 days, during which an investigation is being conducted to determine the need for a professional review action; or

 (2) precluding an immediate suspension or restriction of clinical privileges, subject to subsequent notice and hearing or other adequate procedures, where the failure to take such an action may result in an imminent danger to the health of any individual.

§ 11112(c).

Subsection (c) thus sets out *distinct* ways in which a health care entity can be immune under the HCQIA *without* having complied with the usual requirements for claiming immunity. Wahi would have us read the statute by ignoring this clear purpose and instead find that the HCQIA immunity is barred by failing to meet one of the subsection (c) prongs. To the contrary, subsection (c) presents additional routes to HCQIA immunity beyond that set forth in subsection (a)(3). Although Wahi may be correct that the facts show CAMC cannot assert immunity based on (c)(1) or (c)(2), the only significance is that CAMC must meet the usual standard of qualifying for immunity set forth in subsection (a)(3).[18]

Under subsection (a)(3), a health care entity seeking HCQIA immunity must act "after adequate notice and hearing procedures are afforded to the physician involved *or* after such other procedures as are fair to the physician under the

---

[18][REDACTED]

circumstances." § 11112(a)(3) (emphasis added). Stated in the disjunctive, the statute contemplates two independent avenues by which the subsection (a) immunity prong may be obtained. The first avenue, "adequate notice and hearing procedures," is not at issue in the case at bar. CAMC makes no claim under that prong and the district court did not consider it. What CAMC argues, and the district court held, is that the unique circumstances in this case show that Wahi received "other procedures as are fair to the physician under the circumstances," and entitle CAMC to the HCQIA immunity.

Wahi cites the legislative history of subsection (a)(3) to assert that the "other procedures" undertaken by a health care entity must nonetheless include a hearing. In particular, Wahi relies on this language from the 1986 House Report recommending the adoption of the HCQIA:

> The due process requirement [i.e., subsection (a)(3),] can always be met by the procedures specified in subsection (b). . . . If other procedures are followed, but are not precisely of the character spelled out in [subsection (b)], the test of "adequacy" may still be met under other prevailing law. The Committee is aware, for example, that some courts have already carefully spelled out different requirements for certain professional review activities or actions, such as procedures for decisions regarding applicants for clinical privileges at a hospital. In those situations, compliance with applicable law should satisfy the "adequacy" requirement even where such activities or actions require different or fewer due process rights than the ones specified under [subsection (b)]. In any case, it is the Committee's intent that physicians receive fair and unbiased review to protect their reputations and medical practices.

H.R. Rep. No. 99-903, at 10-11 (1986), *as reprinted in* 1986 U.S.C.C.A.N. 6384, 6393. Nothing in this legislative history

alters the conclusion that a health care entity can satisfy subsection (a)(3) without providing a formal hearing, as contemplated in the safe harbor provisions, depending on the circumstances of a particular case. Rather, Congress' intent — and that expressed by the plain language of the statute — is that a physician be afforded adequate and fair "procedures" with regard to professional review actions, which could be something other than a formal hearing in some circumstances. If this were not so, Congress would have no reason to have included the "other procedures appropriate . . . under the circumstances" language contained in the statute in contrast to the specific "notice and hearing" language.

Wahi also contends that CAMC's failure to follow some of the procedures outlined in its Bylaws and Procedures Manual proves CAMC did not satisfy subsection (a)(3) under the alternative prong. However, as the Court of Appeals for the Fifth Circuit recently observed,

> HCQIA immunity is not coextensive with compliance with an individual hospital's bylaws. Rather, the statute imposes a uniform set of national standards. Provided that a peer review action . . . complies with those standards, a failure to comply with hospital bylaws does not defeat a peer reviewer's right to HCQIA immunity from damages.

*Poliner v. Tex. Health Sys.*, 537 F.3d 368, 380-81 (5th Cir. 2008); *see also Meyers v. Columbia/HCA Healthcare Corp.*, 341 F.3d 461, 469-71 (6th Cir. 2003). Nothing in the subsection (a)(3) phrase "such other procedures as are fair . . . under the circumstances" mandates by-law compliance as the sine qua non for immunity, although from a practical standpoint, by-law compliance may often be proof of such procedures in many cases.

Having concluded that CAMC was not required to hold a formal hearing as a mandatory condition precedent to satisfy-

ing subsection (a)(3), we now examine whether the district court properly determined CAMC provided Wahi with "such other procedures as are fair . . . under the circumstances." We begin that review by underscoring the unique procedural posture upon which summary judgment for a health care entity is measured under the HCQIA, as the district court properly summarized:

> In applying the test outlined in § 11112(a), we begin with the presumption that the hospital has met the necessary standards for immunity unless this presumption is rebutted by a preponderance of the evidence. § 11112(a). The applicable standard is one of objective reasonableness, viewed in light of the totality of the circumstances. *Freilich[ v. Upper Chesapeake Health, Inc.*, 313 F.3d 205,] 212 [(4th Cir. 2002)] (quoting *Imperial v. Suburban [Hosp. Ass'n]*, 37 F.3d 1026, 1030 (4th Cir. 1994)). Reasonableness standards have been consistently upheld in the context of qualified immunity. *Freilich*, 313 F.3d at 213.

*Wahi*, 453 F. Supp. 2d at 950. (J.A. 270.) We find no error in the district court's determination that Wahi failed to rebut the presumption that CAMC's actions satisfied the statutory requirement when the totality of the circumstances are viewed in an objectively reasonable manner.

[REDACTED] informed Wahi of the allegations from the Credentials Committee by letter dated July 16 and further discussed them in a meeting with him on July 17. (J.A. 575-77.) Moreover, Wahi apparently learned of the unauthorized surgery allegation against him even prior to [REDACTED]'s letter because on July 15, he wrote to [REDACTED] stating he understood questions had arisen regarding his decision to perform the procedure, explaining his decision to perform the contested procedure, and setting forth why he believed it fell within his clinical privileges. (J.A. 721-28.) Although [REDACTED]'s July 16 letter does not mention a possible

suspension, it does state that CAMC would be investigating the claims that Wahi had again exceeded his authority under his provisional privileges and not complied with the CAMC Bylaws when he failed to notify CAMC that he had relinquished his privileges at another hospital. Wahi had previously been suspended at least three times for violation of his privileges and was not unaware of the consequences.

**[REDACTED]** also informed Wahi that he should respond in writing as soon as possible and address his reappointment before the Credentials Committee at the August 3, 1999 hearing, (J.A. 576), which was rescheduled for August 17 at Wahi's request. Over the next two weeks, Wahi wrote to **[REDACTED]** and **[REDACTED]** several times, addressing the charges in writing, and providing documents supporting his position that he had not violated the conditions of his clinical privileges. He also requested access to certain records prior to or during the Credentials Committee meeting. (J.A. 730, 731, 732-41, and 742.) The record shows that CAMC provided Wahi with notice of the most recent allegations against him, and an opportunity to respond to those allegations. CAMC complied with its Procedures Manual in this regard.

CAMC suspended Wahi's medical privileges by a letter dated July 30, 1999 from **[REDACTED]**, which recited the "best interests of patient care" as the reason for the action. (J.A. 586.) However, the record does not support Wahi's contention that CAMC did not inform him more specifically of the reasons for his suspension. On July 30, **[REDACTED]** and **[REDACTED]** met with Wahi to inform him of the suspension pending the Credentials Committee's review of his application for reappointment. **[REDACTED]**'s memorandum of that meeting recites that they informed Wahi that the Credentials Committee and Board of Trustees both recommended he be suspended. **[REDACTED]** cited Wahi's "inability to follow procedural guidelines outlined by the Committee and the Board of Trustees which ensures adequate

care and safety of patients," and also told Wahi that when he met with the Credentials Committee, he should "be prepared to defend his lack of adherence to the limitations on his privileges as well as his absence of notification of suspension from St. Francis [Hospital]."[19] (J.A. 965.) The suspension letter reiterated the rights due Wahi under Article III of the Procedures Manual for a hearing to challenge that action, and attached a copy for his use.

The Credentials Committee then afforded Wahi, by letter of August 13, 1999, the opportunity to review the file for the August 17 meeting for the "timeline of events surrounding [his] privileges" at CAMC. The letter also emphasized to Wahi that

> This meeting is your opportunity to present the Committee with additional information that is pertinent to its evaluation of your ethical behavior, clinical competence and clinical judgment in the treatment of patients; compliance with Hospital policies and the Medical Staff Bylaws and Rules and Regulations; behavior in the hospital, your cooperation with medical and Hospital personnel as it relates to patient care or the orderly operation of hospital, and your general attitude toward patients, the Hospital and its personnel; use of the Hospital facilities for your patients; your physical and mental health; your capacity to satisfactorily treat patients as indicated by the results of the Hospital's quality assessment activities or other reasonable indicators of continuing qualifications; your satisfactory completion of such continuing education requirements as may be imposed by law, the Hospital or applicable accreditation agen-

---

[19][REDACTED] and [REDACTED] also agreed that Wahi could continue treating two patients "currently in house" and that care of all of Wahi's patients would be transferred to another physician or discharged by August 1, 1999. (J.A. 965.)

cies; and other relevant findings from CAMC's and the Medical Staff's quality assurance activities.

(J.A. 752.) Copies of relevant portions of CAMC's Procedures Manual were attached to the letter. (J.A. 752-57.) A separate letter informed Wahi how the meeting would be conducted, and set out Wahi's rights regarding the meeting. (J.A. 719-20.)

The Credentials Committee met on August 17, 1999. Wahi appeared before it and presented his case. The Committee concluded it "was unable to identify evidence that Dr. Wahi's clinical competence [and] professional judgment . . . are sufficient to recommend . . . that he be reappointed to the Medical Staff."[20] (J.A. 645-46.) In particular, the Committee cited the following

- Failure to comply with and repeated violation of clinical privileges (§ 3.7 of the Bylaws), including:

  ° Failure to obtain a proctor when required to do so;

  ° Failure to obtain a second opinion when required to do so;

  ° Performance of an operative procedure for which he did not have privileges.

- Marginal indications for operative procedures;

- Poor decision-making in the care of some patients;

---

[20]Denial of reappointment is a NPDB-reportable event. *See* 42 U.S.C. § 11133(a) (requiring health care entities to report "professional review action[s] that adversely affect[ ] the clinical privileges of a physician for a period longer than 30 days").

- Multiple incident reports surrounding bizarre professional behavior and inappropriate personal behavior among nursing staff;

- Failure to comply with responsibilities set forth in the CAMC Bylaws, including providing proper quality of care (§ 3.2), maintaining proper medical records (§ 3.3), and notifying CAMC of the loss of clinical privileges at any other hospital (§ 3.6); and

- Failure to keep a current, complete, and timely record of patient care (§§ 2.1 and 2.7 of the Medical Staff Rules and Regulations) (J.A. 550, 552-53).

(J.A. 645.)

On August 26, 1999, Wahi received the Credentials Committee report and was once again notified of the rights provided in Article III and that he had 30 days to request a hearing.[21] (J.A. 647.) The letter also informed Wahi his suspension remained in effect until the CAMC Board of Trustees acted on his reappointment. (J.A. 647.) On September 8, 1999, Wahi, by counsel, timely requested a hearing as well as a witness list and a number of specified documents. (J.A. 648-53.)

On October 18, 1999, CAMC notified Wahi of the members of the hearing panel and asked Wahi to "work with the presiding officer to schedule and conduct the hearing in accordance with . . . Article III," and again forwarded Wahi the Procedures Manual.[22] (J.A. 654-55, 699-700.) CAMC did

---

[21]Article III of the Procedures Manual set forth Wahi's right to a hearing based on both the summary suspension and the Credentials Committee's recommendation to deny Wahi's application for reappointment. (See Procedures Manual 2.3.4.2, 2.4.3, 3.1; J.A. 484-87.)

[22]The Procedures Manual stated that once a hearing is requested, the President of CAMC "shall schedule the hearing and shall give notice of its time, place and date . . . to the person who requested the hearing. The hearing shall begin as soon as practicable, considering the schedules and availability of all concerned, provided that [it] shall not begin without at least thirty days notice." (Procedures Manual 3.6; J.A. 489.)

not give Wahi a specific witness list,[23] but afforded his counsel access to some of the files requested in the September 8, 1999 letter. CAMC repeatedly requested that Wahi provide available dates for his hearing because "the hearing will take a number of days" and it was important to "select dates well enough in advance that all involved parties can clear their schedules." (J.A. 776.) In over 8 years since his request for a hearing, Wahi has yet to provide CAMC with any dates when he would be available for a hearing.

During the following year, the parties negotiated over how the hearing would be conducted. Wahi objected to the composition of the panel, its presiding officer,[24] and the use of any incident or discipline during his medical practice at CAMC that he did not address at the August 17, 1999 Credentials Committee meeting. And while CAMC had opened many of its files to Wahi and his counsel, some items Wahi had requested had not been disclosed due to privacy disagreements, which had not been resolved. The parties also attempted to negotiate a resolution of the matter, including withdrawing Wahi's suspension based on a written statement of the basis for CAMC's actions. However, the parties were unable to reach an agreement. (J.A. 760-83, 118-30.)

On November 30, 2000, Wahi filed an action in the West Virginia state court to enjoin his requested hearing unless CAMC met his pre-conditions. Wahi asked the state court to order, inter alia, that his method of selection for the hearing

---

[23]Section 3.7 of the Procedures Manual states that CAMC should have provided a list of witnesses to Wahi "within ten days" of his request, and that the witness list could be supplemented or amended in the discretion of the presiding officer of the hearing, provided that notice of the change has been given. (J.A. 489.)

[24]The Procedures Manual provides that the President of CAMC "shall appoint a panel of not less than three members, none of whom are in direct competition with the individual who requested the hearing," after considering the recommendations of the Chief of Staff and the Chairman of the Board." (Procedures Manual 3.8; J.A. 489.)

panel be used, that no matters of Wahi's medical practice at CAMC be considered at the hearing except those mentioned in **[REDACTED]**'s July 30, 1999 letter, and that the court maintain "jurisdiction over the administrative hearing." (J.A. 99, 112, 99-114.)

The state court rejected Wahi's arguments and dismissed the complaint, stating Wahi's arguments were speculative and "[i]t would be premature for the Court to make any determination as to whether or not the notice given to Dr. Wahi satisfies the 'fair procedures' requirement." (J.A. 141.) Furthermore, the court noted that the composition of the hearing panel was in conformity with CAMC's Procedures Manual, and that any objections about the hearing panel or the evidence to be considered should be raised before the hearing panel. The court entered its final order of dismissal on December 6, 2001.

In the meantime, the West Virginia Board of Medicine filed a complaint against Wahi on September 10, 2001, and set a hearing "to determine whether disciplinary action should be taken . . . against Dr. Wahi's license to practice medicine." (J.A. 149.) Wahi and the Board of Medicine engaged in protracted litigation, which included Wahi's unsuccessful attempt to halt the proceedings by seeking a writ of prohibition against the Board of Medicine from the Supreme Court of Appeals of West Virginia. On November 10, 2003, the proceedings were dismissed, without a final disposition on the merits of the allegations. (J.A. 147-175, 701.) Wahi made no effort during this time period to pursue a hearing at CAMC. While CAMC argues this was a deliberate choice by Wahi to prevent a hearing that would create a record that could affect the Board of Medicine proceedings, the district court made no finding in that regard, CAMC assigns no error to the lack of a finding, and we therefore do not consider it. The next action in time was the filing of Wahi's complaint in the district court.

Lastly, in considering whether the procedures provided by the health care entity are fair "under the circumstances," the July 1999 allegations against Wahi cannot be considered in a vacuum. These allegations were simply the latest in Wahi's tumultuous history with CAMC, as the August 26, 1999 Credentials Committee letter set forth. Since his reappointment in 1995, Wahi had been the subject of numerous reports and complaints calling his professional competence and conduct into question. The record shows that these complaints arose from a multitude of discrete incidents, were made by different individuals, and were known to Wahi. After all Wahi had been through the suspension process previously at CAMC, including the prior reports to the NPDB. CAMC investigated and imposed restrictions, including temporary suspensions, as a result of those investigations. Wahi was aware of the consequences for failing to abide by the Bylaws and Procedures Manual. He was not a first-time offender who was unfamiliar with the responsibilities of his position at CAMC or the consequences for his failures in July 1999. (J.A. 130-31, 248-53, 339-97, 496-571.)

While CAMC's path to immunity in this case is not a recommended model, it must be evaluated considering all the events which transpired, not just those Wahi views as favorable to him. Had CAMC simply set a prompt hearing, whatever Wahi's objections and efforts to stop it, CAMC may have been within its rights to do so and may have met the first prong of subsection (a)(3). Similarly, CAMC should have followed its Bylaws and the Procedures Manual, and provided Wahi a witness list, even if it had to be later supplemented. However, these failures by CAMC, when viewed in the totality of the circumstances against a measuring stick of objective reasonableness, do not show Wahi met his burden of proof to rebut the presumption of immunity under the HCQIA. Wahi was on notice of the many charges against him, including the detailed Credentials Committee report of August 26, 1999. He was repeatedly notified of his rights and given multiple copies of documents explaining these rights. He was repeatedly

asked for dates for a hearing. While CAMC attempted to accord Wahi a hearing in conformity with the Procedures Manual, Wahi seemed more intent on forestalling a hearing than having one.

Had Wahi proceeded to a hearing, any complaint about the inadequacy of notice, defective witness list or discovery, the composition of the hearing panel, the conduct of the hearing, or other relevant issues could have been addressed and subjected to judicial review. In the face of Wahi's recalcitrance, it is at the least disingenuous to now claim his right to a hearing was infringed when he has done all he could do *not* to have a hearing. Viewing the totality of these circumstances in an objectively reasonable manner, we cannot conclude that the district court erred in determining Wahi failed to rebut the presumption that CAMC afforded him "other procedures as are fair to the physician under the circumstances." We therefore affirm the district court's holding that CAMC is entitled to immunity under the HCQIA.

## B.    Injunctive Relief

Wahi also contends the district court erred in awarding summary judgment[25] as to his claims for injunctive relief because "[a]lthough the HCQIA immunize[d] [CAMC and Dr. Crotty] from claims for monetary damages, that statutory immunity does not apply to injunctive relief." (Br. Appellant 25.) He asserts he has satisfied the requirements for obtaining an injunction requiring CAMC to provide him a hearing and

---

[25]We review the district court's grant of summary judgment on this issue de novo. *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 283 (4th Cir. 2004) (en banc). "Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Id.* (internal quotation marks omitted). We construe the evidence in the light most favorable to Wahi, the party opposing the Appellees' motion, and draw all reasonable inferences in his favor. *See id.*

remove his name from the NPDB list because he cannot acquire gainful employment so long as his name is on the NPDB list, monetary damages will not restore his ability to practice, and the public possesses a strong interest in ensuring hospitals abide by the law. (Br. Appellant 25-26; Reply Br. 17-20.)

The HCQIA only provides immunity from suits for damages. 42 U.S.C. § 11111(a)(1); *see Imperial*, 37 F.3d at 1030-31. The district court expressly recognized this limitation, and it did not base its decision that Wahi was not entitled to injunctive relief on CAMC's immunity under the HCQIA. (J.A. 289-90.) Instead, it concluded Wahi "fail[ed] to make any argument or allege any facts that would entitle him to injunctive relief." *Wahi*, 453 F. Supp. 2d at 960. (J.A. 289-90.)

The district court did not err in this determination. In order to pursue injunctive relief to redress his Anti-Trust, breach of contract, and defamation claims, Wahi must have a viable claim that CAMC committed a wrong.

> [A] remedy must be tailored to a violation [and] the nature of the violation determines the scope of the remedy. Remedies, in other words, do not exist in the abstract; rather, they flow from and are the consequence of some wrong. At its most basic, this principle limits the reach of judicial decrees to parties found liable for a legal violation.

*See Bacon v. City of Richmond*, 475 F.3d 633, 638 (4th Cir. 2007) (quoting *Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 16 (1971)) (internal quotation marks and citations omitted). Wahi has not made the requisite showing for any of the claims for which the district court determined the HCQIA immunity applied. The district court provided non-HCQIA-based reasons for awarding CAMC summary judgment on

Wahi's breach of contract and defamation claims, which Wahi has also appealed, and which we discuss below.

Lastly, even if Wahi succeeded on the merits of his Anti-Trust claims, he would not be entitled to the injunctive relief he sought in his amended complaint. Wahi's amended complaint asked for an injunction directing CAMC "to remove its derogatory reports concerning Dr. Wahi from the NPDB" and "to reinstate Dr. Wahi's hospital privileges." (J.A. 92.) This relief is not connected to any alleged acts of anti-competitive behavior by CAMC.

## C.    State Actor

Wahi asserts the district court erred in determining CAMC was not a state actor, as that term is contemplated under § 1983, and therefore not amenable to suit under that statute.[26] (Br. Appellant 12-15; Reply Br. 21-22.) To state a claim under § 1983, a plaintiff must aver that a person acting under

---

[26]As noted, the district court dismissed all but one of Wahi's § 1983 claims in its October 27, 2004 order granting CAMC's motions under Rule 12(b)(6). Therefore, we conduct a de novo review of the district court's decision, *Mylan Labs, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir 1993), accepting all allegations in Wahi's complaint as true. *Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). To survive a Rule 12(b)(6) motion, "[f]actual allegations must be enough to raise a right to relief above the speculative level" and have "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1965, 1974 (2007). Moreover, the court "need not accept the [plaintiff's] legal conclusions drawn from the facts," nor need it "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Kloth v. Microsoft Corp.*, 444 F.3d 312, 319 (4th Cir. 2006) (internal quotation marks omitted).

Wahi challenges the district court's determination that CAMC was not itself a state actor, but he makes no argument related to the September 29, 2006 order dismissing his conspiracy-based § 1983 claim based on a failure to show any evidence that CAMC conspired with the state Board of Medicine. Accordingly, our review is limited to the § 1983 claims dismissed in the district court's October 2004 order.

color of state law deprived him of a constitutional right or a right conferred by a law of the United States. *See Dowe v. Total Action Against Poverty*, 145 F.3d 653, 658 (4th Cir. 1998). "Like the state-action requirement of the Fourteenth Amendment, the under-color-of-state-law element of § 1983 excludes from its reach 'merely private conduct, no matter how discriminatory or wrongful.'" *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999). Consequently, "[t]he person charged must either be a state actor or have a sufficiently close relationship with state actors such that a court would conclude that the non-state actor is engaged in the state's actions." *DeBauche v. Trani*, 191 F.3d 499, 506 (4th Cir. 1999). "[P]rivate activity will generally not be deemed 'state action' unless the state has so dominated such activity as to convert it to state action: 'Mere approval of or acquiescence in the initiatives of a private party' is insufficient." *Id.* at 507; *see also Dowe*, 145 F.3d at 659.

To support his argument, Wahi contends that by reporting him to the NPDB, CAMC "essentially de-credentialed" him, a power that is "reserved exclusively to state government" and turns CAMC's conduct into state action. (Br. Appellant 14, 12-15; Reply Br. 21-22.) We previously examined, and rejected, a similar argument in *Modaber v. Culpeper Memorial Hospital, Inc.*, 674 F.2d 1023 (4th Cir. 1982). In that case, we held that a hospital's compliance with a Virginia statute requiring the hospital to report the revocation of privileges did not "authorize state officials to make privileges decisions, or to set forth directions governing the outcome of such decisions, or attach consequences to their results." *Id.* at 1027 (footnotes omitted). For these reasons, we held the Virginia statute did not "involve the 'exercise by a private entity of powers traditionally exclusively reserved to the State.'" *Id.* at 1027 (quoting *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 352 (1974)); *see also Freilich*, 313 F.3d at 214 n.3 (holding private hospital was not a state actor because the state played no role in the "actual decision as to whether or not to terminate or reappoint any particular physician").

Similarly, the federal statute requiring a hospital to report credentialing decisions to the NPDB does not authorize state officials to make any decisions regarding a physician's hospital privileges, nor does it direct the hospital's actions thereafter. Instead, it simply requires hospitals to report to the NPDB adverse professional review action "affect[ing] the clinical privileges of a physician." *See* 42 U.S.C.A. § 11133. Accordingly, we find that the statute does not confer to CAMC powers traditionally reserved to the state, and it does not turn CAMC's actions into state action for a § 1983 claim.[27]

## D.    Defamation Claim

Wahi contends that the district court erred in awarding summary judgment on his defamation claim.[28] He specifically argues on appeal that "Wahi was defamed when Dr. Crotty intentionally disclosed to the local media that CAMC had reported him to the NPDB." (Br. Appellant 34.) This argument, however, was not presented to the district court and appears for the first time on appeal. Wahi's amended complaint states as the sole basis for his defamation claim that CAMC's "amended reports published by [CAMC] to the NPDB on June 10, 2003, were false and defamatory, *per se*." Wahi contends CAMC published the "defamatory reports to the NPDB with reckless disregard for the truth" and therefore "is liable to [Wahi] for defamation." (J.A. 88.) This is the argument presented and ruled upon by the district court when

---

[27]In addition, Wahi also cites CAMC's "extensive programs and merger with" West Virginia University (a public institution), CAMC's status as the "largest hospital," in the state, and a comment made in a CAMC Foundation book characterizing CAMC as an "entirely public institution." (Br. Appellant 12-15; Reply Br. 21-22.) These arguments were raised for the first time on appeal and therefore we will not consider them. *See Williams v. Prof. Transp. Inc.*, 294 F.3d 607, 614 (4th Cir. 2002) (stating that issues raised for the first time on appeal "are generally not considered absent exceptional circumstances"). (Compare J.A. 28-30, with R. 24 pp. 13-14.)

[28]We review this claim de novo, under the traditional principles set forth *supra*, note 25.

determining whether HCQIA immunity barred Wahi from pursuing the claim. (See R. 98, p. 75.)

Wahi's defamation claim on appeal is therefore not the one presented in his amended complaint. We have previously held, along with the Fifth, Sixth, Seventh, and Eleventh Circuits, that a plaintiff may not raise new claims after discovery has begun without amending his complaint. *Barclay White Skanska, Inc. v. Battelle Mem'l Inst.*, 262 Fed. Appx. 556, 563 (4th Cir. 2008) (unpublished) (citing *Tucker v. Union of Needletrades, Indus., & Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2005); *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004); *Shanahan v. City of Chicago*, 82 F.3d 776, 781 (7th Cir. 1996); and *Fisher v. Metro. Life Ins. Co.*, 895 F.2d 1073, 1078 (5th Cir. 1990)). Wahi never amended his complaint to change his existing defamation claim or add a new defamation claim based on Dr. Crotty's statement to the media. Therefore, we will not consider the claim for the first time on appeal. *See United States v. Evans*, 404 F.3d 227, 236 n.5 (4th Cir. 2005) (stating that a party who "failed to raise [an] argument before the district court . . . has . . . waived it on appeal"). Furthermore, because Wahi did not argue his claim of defamation based on the filing of the NPDB report on appeal, that claim is abandoned. *See 11126 Baltimore Boulevard, Inc.*, 58 F.3d at 993 n.7 (issue waived when not argued on appeal).

## E.    Breach of Contract Claim

As an alternative basis for awarding summary judgment on Wahi's state law breach of contract claim, the district court concluded CAMC's Bylaws did not constitute a contract between CAMC and Wahi. (J.A. 280-82.) Wahi asserts the district court erred because, under West Virginia law, a hospital's bylaws constitute a contract between the physician and the hospital when a physician is accused of misconduct. Citing *Kessel v. Monongalia County Gen. Hosp. Co.*, 600 S.E.2d 321 (W. Va. 2004), Wahi contends that because a hospital is

"bound" to afford a physician the procedures set forth in its bylaws, "noncompliance with those provisions compels the conclusion that CAMC breached [its] contract" with Wahi. (Br. Appellant 37-39.) We disagree.

Wahi's argument does not properly follow the West Virginia Supreme Court of Appeals' analysis in *Kessel*. The court clearly rejected the argument that the hospital's medical staff bylaws constituted a contract between the plaintiffs and the hospital, which the hospital allegedly breached. *Id.* at 326.

> [T]he essential element of valuable consideration is absent. This Court has held that the doing by one of that which he is already legally bound to do is not a valuable consideration for a promise made to him, since it gives to the promisor nothing more than that to which the latter is already entitled. . . . Because the hospital was already bound by [state] law to approve the bylaws of the medical staff, and the medical staff was bound to initiate and adopt bylaws, neither party conferred on the other any more than what the law already required. Thus, we conclude that the medical staff bylaws do not constitute a contract [absent express language to the contrary].

*Id.* (internal quotation marks and alterations omitted). While a hospital may be required to follow its by-laws as a due process component, there is no contractual relationship unless the by-laws specifically so provide. *Id.* at 327. There was no such provision in *Kessel*, and there is none in the case at bar. Whatever due process entitlement Wahi may claim by virtue of the CAMC by-laws, his arguments are subsumed by the foregoing analysis of his civil rights claims, which failed.

Accordingly, we hold the district court did not err in awarding CAMC summary judgment on Wahi's breach of contract claim.

### F.    Breach of Confidentiality

Wahi's last argument is that the district court erred in dismissing his state law "breach of confidentiality" claim because 45 C.F.R. § 60.13 prohibited CAMC from disclosing to the local news media the fact that it had reported Wahi to the NPDB.[29],[30] (Br. Appellant 35-37.)

45 C.F.R. § 60.13 states, in relevant part:

> Information reported to the [NPDB] is considered confidential and shall not be disclosed outside the Department of Health and Human Services . . . . Persons and entities which receive information from the [NPDB] either directly or from another party must use it solely with respect to the purpose for which it was provided. . . .

> Any person who violates [the above provision] shall be subject to a civil money penalty of up to $10,000 for each violation.

---

[29]As noted, the district court disposed of Wahi's claim in its October 2004 order granting CAMC's Rule 12(b)(6) motion. Accordingly, we review the district court's decision *de novo*. *See supra* note 26.

[30]CAMC responds that we should not consider Wahi's argument because Wahi's complaint asserted "invasion of privacy," and not "breach of confidentiality," which are two separate torts under West Virginia law. (Br. Appellee 39-40.)

Wahi's complaint appears to merge an allegation of "invasion of privacy, . . . or in the alternative, a wrongful disclosure of private facts." Wahi specifically alleges CAMC "violated the confidentiality of reports to the NPDB" by disclosing to the local media the fact that it had reported Wahi to the NPDB. (J.A. 38-39.) The district court identified the claim as one for Wahi's "inva[sion of] privacy, or in the alternative, wrongful[ ] disclos[ure of] private facts." (J.A. 63.) Although Wahi's complaint could have been much clearer in setting out a cause of action, we find that it was at least sufficient for him to have preserved the issue raised on appeal.

We find no error in the district court's conclusion that Wahi failed to allege that CAMC's conduct constituted a breach of confidentiality. Section 60.13 guarantees the confidentiality of "[i]nformation reported to" the NPDB and specifically limits the actions of individuals who "receive information *from*" an NPDB report. *Id.* (emphasis added). It therefore does not prevent the entity who reported NPDB from disclosing the mere fact that a report was filed. Accordingly, the district court did not err in granting CAMC's Rule 12(b)(6) motion as to this claim.

## III.

For the foregoing reasons, we affirm the judgment of the district court.

*AFFIRMED*